**William STEWART, Plaintiff,**

v.

**UNITED STATES of America, and North American Asbestos Corporation, a corporation, Defendant.**

No. 76–0055.

United States District Court,
C. D. Illinois,
Springfield Division.

March 12, 1980.

James Walker, Bloomington, Ill., for plaintiff.

Gerald Fines, U. S. Atty., John Germeraad, Asst. U. S. Atty., Springfield, Ill., William R. Herman, Darci L. Rock, Peter A. Nowinski, Torts Branch, Civil Division, U. S. Dept. of Justice, Washington, D. C., for United States.

William J. Voelker, Jr., Lyle Allen, Heyl, Royster, Voelker & Allen, Peoria, Ill., Frederick P. Velde, Heyl, Royster, Voelker & Allen, Springfield, Ill., for North American Asbestos.

Cassidy, Cassidy, Mueller & Price, Peoria, Ill., for intervenor Owens-Corning Fiberglas.

## ORDER

J. WALDO ACKERMAN, District Judge.

This case involves a claim against the United States under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), § 2671 *et seq.*, and is based upon the sale of asbestos from the national stockpiles by the Government to Union Asbestos and Rubber Company (UNARCO) and to Owens-Corning Fiberglas Corporation, which purchased the UNARCO plant in 1970. Also named as defendant is North American Asbestos Corporation, a distributor of asbestos fibers who sold asbestos to UNARCO and Owens-Corning. This case was filed in 1976 by five plaintiffs, employees of UNARCO who had contracted asbestosis, a pulmonary lung disease. Four of these plaintiffs voluntarily dismissed their claims pursuant to Federal Rule of Civil Procedure 41(a) and William Stewart, the remaining original plaintiff, died in 1978. Stewart's widow had filed an amended complaint on January 14, 1977,

seeking recovery for her husband's medical expenses and for loss of consortium. She remains as the only plaintiff in this case.

A discussion of some background material is necessary to put this case in context. In 1966, the Office of Emergency Preparedness (OEP) was authorized under the Strategic and Critical Materials Stockpiling Act, 50 U.S.C. § 98 *et seq.*, to determine the types and amounts of materials to be stored for national security needs. The OEP requested General Services Administration-Defense Materials Service to prepare a plan for the disposal of excess asbestos. The Stockpiling Act, 50 U.S.C. § 98b(e), requires the express approval of Congress for disposal plans unless the reason for the disposal is obsolescence. This same statute requires that the plan and date of disposal be fixed "with due regard to the protection of the United States against avoidable loss on the sale or transfer of material to be released and the protection of producers, processors, and consumers against avoidable disruption of their usual markets." Accordingly, GSA developed a plan for the disposal of 15,170 short tons of excess amosite asbestos over a period of years. The average acquisition cost was $245 per short ton as of December 31, 1965. The market value as of March 4, 1966 was $241 per short ton.

The plan and a proposed bill were submitted to Congress and on May 11, 1966, the President approved Public Law 89–422 authorizing the Administrator of General Services to dispose of the asbestos. That Act provides as follows:

> Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled. That the Administrator of General Services is hereby authorized to dispose of, by negotiation or otherwise, approximately fifteen thousand, one hundred and seventy short tons of amosite asbestos now held in the national stockpile established pursuant to the Strategic and Critical Materials Stock Piling Act (50 U.S.C. 98–98h) and the supplemental stockpile established pursuant to section 104(b) of the Agricultural Trade Development and As-

sistance Act of 1954, as amended (7 U.S.C. 1704(b)). Such disposition may be made without regard to the provisions of section 3 of the Strategic and Critical Materials Stock Piling Act: Provided, That the time and method of disposition shall be fixed with due regard to the protection of the United States against avoidable loss and the protection of producers, processors, and consumers against avoidable disruption of their usual markets.

Consequently, bids were solicited and the asbestos was sold to UNARCO and others "as-is", without warranties of any kind.

 Plaintiff's complaint, Count 6.1, against the United States charges that at the time the product left the defendant's control, the product was not reasonably safe in that:

(a) it contained no warning or label that inhalation of asbestos particles caused fibrosis of the lungs and other respiratory pathology, including asbestosis;

(b) it contained no instruction whatsoever as to safe methods of handling and processing asbestos fibers.

Thus, plaintiff charges the Government with selling an unreasonably unsafe product, a claim sounding in strict liability. *See* Prosser, *Law of Torts,* § 99 (4th ed. 1971). It is settled that the FTCA governs negligent or wrongful conduct, but does not extend to claims based on strict liability. *Dalehite v. United States,* 346 U.S. 15, 44–45, 73 S.Ct. 956, 972, 97 L.Ed. 1427 (1952); *Laird v. Nelms,* 406 U.S. 797, 921 S.Ct. 1899, 32 L.Ed.2d 499 (1972). Consequently, Count 6.1 is dismissed for failure to state a claim on which relief can be granted.

Counts 6.2 and 6.3 respectively charge the United States with negligence and wilful and wanton conduct in selling the asbestos fibers to the plant without proper warnings or handling instructions when it knew or should have known that inhalation of asbestos particles caused fibrosis of the lungs.

There are two counts pending against North American charging that the product was not reasonably safe when it left North

American's control and that North American acted wilfully and wantonly when it sold the asbestos to the plant without warnings or handling instructions when it knew or should have known that inhalation of asbestos fibers could cause fibrosis of the lungs.

## I. Tort Claims Act

■ The Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.,* waives the Government's sovereign immunity for certain torts, providing relief to victims of negligent or wrongful acts or omissions of Government employees committed while acting within the scope of employment. The Government asserts, however, that it has retained its immunity from liability in this case, relying on 28 U.S.C. § 2680(a) as a jurisdictional bar to plaintiff's suit. Section 2680 provides in part as follows:

> The provisions of this chapter and section 1346(b) of this title shall not apply to
> (a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

Thus governmental immunity is retained under § 2680(a) in two instances. (1) When an employee carries out the mandate of a statute or regulation with due care, and (2) when a discretionary function is involved. The Government contends that both of these exceptions to FTCA liability apply in this case.

The Government argues that it exercised due care in the execution of Public Law 89–422 when it gave due regard to the protection of the United States against avoidable loss and to the protection of producers, processors and consumers against avoidable disruption of their usual markets. Thus, the Government contends, once it considered these two factors, it was insulated from liability for any subsequent negligent acts which occurred in executing the statute. Had the statute limited GSA to a consideration of only these two factors, I might agree with the Government's interpretation. But just because a statute requires that certain factors be considered, it does not mandate that every other factor, such as public health, be ignored.

■ However, the Government also argues that this exception applies because the sale of asbestos to companies which used the product in the manufacturing process with knowledge of its propensities, (as noted in plaintiff's pleadings), constituted "due care" in executing Public Law 89–422. This argument is more persuasive and carries some surface appeal. Basically, the Government argues that if it exercised due care in selling asbestos, this exception applies to deprive this Court of jurisdiction. If this interpretation is correct, then the exception is meaningless. If the Government had exercised due care, there would be no liability under the FTCA, since liability is predicated only on negligence or wrongful acts. An exception for acts done with due care would be unnecessary and redundant. Rather, the primary purpose of this exception was to preclude testing the legality of a statute or regulation by a tort action.

> The bill is not intended to authorize a suit for damages to test the validity of or provide a remedy on account of such discretionary acts even though negligently performed and involving an abuse of discretion. Nor is it desirable or intended that the constitutionality of legislation, or the legality of a rule or regulation should be tested through the medium of a damage suit for tort.

H.R.Rep.No. 2245, 77th Cong., 2d Sess. 10 (1942); S.Rep.No. 1196, 77th Cong., 2d Sess. 7 (1942); H.R.Rep.No. 1287, 79th Cong., 1st Sess. 5–6 (1945); *See also* Hearings on H.R. 5373 and H.R. 6463 Before House Comm. on Judiciary, 77th Cong., 2d Sess. 33 (1942). *See also, Dalehite v. United States,* 346 U.S. 15, 27–29, 33, 73 S.Ct. 956, 963–964, 966, 97 L.Ed. 1427 (1952); *Wright v. United States,* 568 F.2d 153, 159 (10th Cir. 1977) (Holloway,

J., dissenting), *cert. denied*, 439 U.S. 824, 99 S.Ct. 94, 58 L.Ed.2d 117 (1978); *Dupree v. United States*, 247 F.2d 819, 824–25 (3d Cir. 1957); *Powell v. United States*, 233 F.2d 851, 854 (10th Cir. 1956); *Avery v. United States*, 434 F.Supp. 937, 943 (D.Conn.1977). For example, if a statute provided that a postal inspector must open all mail with foreign postmarks, a person could not bring an action under the FTCA when the inspector executed this statute by opening foreign mail. Although the statute could be subject to challenge on other grounds, the FTCA could not be used to attack it because of the first exception under § 2680(a). However, if the inspector did not exercise due care and opened all mail, foreign and domestic, there could be liability under the FTCA. In this case, the plaintiff's complaint is not based on the fact of the sale; she is not attacking the validity of Public Law 89–422 which authorized the Government to dispose of excess stockpiled asbestos. Instead, she attacks the manner in which the sale was made, i. e. without warnings. Such an action would not be precluded by the first , exception under § 2680(a).

## II. Discretionary Function

Plaintiff charges that the Government acted negligently and wilfully when it sold the asbestos fibers to UNARCO without warnings or handling instructions. The Government's position is that the decision to sell the asbestos in the crates in which it was stored, in an "as-is" condition and without warranty was a decision involving policy judgment and thus was within the discretionary function exception to liability. Plaintiff, on the other hand, argues that the decision not to label the crates was not a policy-level decision but rather was made at the operational level and thus was not immunized. If the decision is found to be within the exception, this Court then lacks jurisdiction of this cause under the FTCA. *Dalehite v. United States*, 346 U.S. 15, 24, 73 S.Ct. 956, 962, 97 L.Ed. 1427 (1952); *Stephens v. United States*, 472 F.Supp. 998, 1009 (C.D.Ill.1979); *Blessing v. United States*, 447 F.Supp. 1160, 1167 (E.D.Pa. 1978).

Plaintiff has also requested this Court to defer its decision on the applicability of the discretionary function exception to this case so that she may conduct further discovery to support her contention that the exception does not apply here. Certainly, the Court must have an adequate basis for deciding whether the acts complained of are "discretionary". In this case, there has been extensive discovery conducted by both plaintiffs and defendants accompanied by numerous discovery disputes. There is now sufficient material in the file to enable the Court to determine, as a matter of law, whether the discretionary function exception applies in this case. *See Miller v. United States*, 583 F.2d 857, 866 (6th Cir. 1978) and *compare Blessing v. United States*, 447 F.Supp. 1160, 1186 (E.D.Pa.1978).

There are numerous cases concerning the discretionary function and what types of activities come within the exception. Although the cases have not been consistent, some general principles have evolved. (For an exhaustive discussion of the discretionary function exception and its legislative history, *see Dalehite v. United States, supra*, and *Blessing v. United States*, 447 F.Supp. 1160, 1167–86 (E.D.Pa. 1978)). Courts generally analyze the nature of the governmental judgment involved and determine whether it required a balancing of policy factors. *Stephens v. United States*, 472 F.Supp. 998, 1008 (C.D.Ill.1979). *See also Downs v. United States*, 522 F.2d 990, 997 (6th Cir. 1975); *Smith v. United States*, 375 F.2d 243, 246 (5th Cir.), *cert. denied*, 389 U.S. 841, 88 S.Ct. 76, 19 L.Ed.2d 106 (1967). As the Supreme Court in *Dalehite* stated, a discretionary function includes "more than the initiation of programs and activities. It also includes determinations made by executives or administrators in establishing plans, specifications or schedules of operation. Where there is room for policy judgment and decision there is discretion." 346 U.S. at 36, 73 S.Ct. at 968. Other language employed in the *Dalehite* case has been seized upon by the

courts as an aid in determining whether an activity falls within the exception. That is, if a decision was made at an "operational" as opposed to "planning" level, it is not immunized. 346 U.S. at 42, 73 S.Ct. at 971. Thus, the discretionary function exception does not insulate the Government for all mistakes of judgment of its agents or for all decisions involving the exercise of some "discretion", *Miller v. United States*, 583 F.2d 857, 866–67 (6th Cir. 1978), for, if this were the case, it would be difficult to find a situation where the Government could be held liable. Certainly this was not Congress' intent when it adopted the FTCA, "It is the discretion of the executive or administrator to act according to one's judgment of the best course" that is protected. *Dalehite*, 346 U.S. at 34, 73 S.Ct. at 967.

The leading case regarding the discretionary function exception is *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1952). The facts of that case and the claims asserted there are strikingly similar to those involved in the case at bar. That case involved a disastrous explosion of a large amount of ammonium nitrate fertilizer known as FGAN in the Texas City, Texas harbor. The fertilizer had been produced and distributed according to specifications supplied by the United States, at the direction and under the control of the Government. The fertilizer was being shipped overseas to help increase food production in Europe and Japan following World War II when the ships containing the FGAN exploded, killing many people and razing a large portion of the city.

Suit was brought against the United States under the FTCA. The plaintiff charged the Government with negligence for shipping FGAN, without an investigation of its properties, into a congested area *without warning* of the possibility of explosion under certain conditions or demanding safe procedures for handling. 346 U.S. at 23, 73 S.Ct. at 961. The plaintiff charged that ammonium nitrate had been used as an ingredient of explosives for so long that industry knowledge gave notice that the fertilizer might explode.

Plaintiff charged the Government with several acts of negligence, but the most relevant involved the failure to label the bags of fertilizer properly. The Court found that the decision to label the fertilizer only as "oxidizing material" was within the discretionary function exception because it was made at the planning, rather than operational, level.[1]

The complaint in this case is based upon the sale of asbestos fibers by the Government to knowledgeable industry users without labeling the crates with warnings concerning the dangerous propensities of asbestos and without appropriate handling instructions. If the decision to sell the asbestos in unmarked crates was a decision necessitating the weighing of policy considerations, the Government is protected from liability by 28 U.S.C.A. § 2680(a).

■ Certainly there can be no dispute about the ability of Congress to pass Public Law 89–422 authorizing the sale of asbestos from the national stockpiles. This is precisely the type of governmental activity

---

1. Plaintiff urges the Court not to be bound by the holding or reasoning employed by the Court in *Dalehite*, asserting, without citation, that cases subsequent to *Dalehite* support plaintiff's position. Other courts have determined that the *Dalehite* holding has been limited by subsequent Supreme Court cases. *See e. g., Aretz v. United States*, 604 F.2d 417, 427 (5th Cir. 1979); *Smith v. United States*, 375 F.2d 243, 246 (5th Cir.), *cert. denied*, 389 U.S. 841, [88 S.Ct. 76, 19 L.Ed.2d 106] (1967). *Bub Davis Packing Co. v. United States*, 443 F.Supp. 589, 594 (W.D.Tex. 1977), *aff'd* 584 F.2d 116 (5th Cir. 1978) *cert. denied*, [441 U.S. 931] 99 S.Ct. 2051 [60 L.Ed.2d 659] (1979). Those cases, *Rayonier, Inc. v. United States*, 352 U.S. 315, 319 [77 S.Ct. 374, 376, 1 L.Ed.2d 354] (1957) and *Indian Towing Co. v. United States*, 350 U.S. 61, 67, [76 S.Ct. 122, 125, 100 L.Ed. 48] (1955), did alter the effect of *Dalehite* but in a way inapplicable here. The Court in those two cases retreated from the *Dalehite* holding that the United States could never be liable while performing a "uniquely" governmental function which a private entity would not perform. The Court instead held that the Government could be liable for the negligent performance of a governmental activity if a private party would be liable had it undertaken the same activity. This is not an issue in this case.

with which the judiciary will not interfere. Although plaintiff's complaint is based essentially on a failure to warn, she argues in her memorandum in opposition to the Government's motion to dismiss that knowledge of the dangers of asbestos at the time of the sale militated against the release of any amount of asbestos into commerce. The thrust of this argument is that the Government should be liable because it sold asbestos. Clearly the decision to sell asbestos involved policy considerations at the highest levels and that decision cannot result in tort liability for the Government. The decision to sell the asbestos "as-is" and without warnings or warranties, however, must be examined separately in order to determine the applicability of Section 2680(a). *Stephens v. United States*, 472 F.Supp. 998, 1009 (C.D.Ill.1979).

The cases dealing with whether the Government's failure to warn results in tort liability do not greatly aid this Court, since the decisions in those cases turned on the particular facts involved. *See, Smith v. United States*, 546 F.2d 872 (10th Cir. 1976) and cases cited therein at 877 and *compare First National Bank in Albuquerque v. United States*, 552 F.2d 370 (10th Cir.) *cert. denied* 434 U.S. 835, 98 S.Ct. 122, 54 L.Ed.2d 96 (1977); *Spillway Marina, Inc. v. United States*, 445 F.2d 876 (10th Cir. 1971). The policy judgment analysis used in determining whether an activity is within the discretionary function exception is equally applicable to the contested decision in the case at bar.

As stated above, Public Law 89–422 gave express Congressional approval to the disposal of excess asbestos by GSA, as required by 50 U.S.C. § 98b(e). The method of disposition was governed by 40 U.S.C. § 484(c) which provides:

Any executive agency designated or authorized by the Administrator [of GSA] to dispose of surplus property may do so by sale, exchange, lease, permit, or transfer, for cash, credit or other property, with or without warranty, and upon such other terms and conditions as the Administrator deems proper, and it may execute such documents for the transfer of title or other interest in property and take such other action as it deems necessary or proper to dispose of such property under the provisions of this subchapter.

Readus B. Long, Director of the Stockpile Disposal Division of GSA has submitted an affidavit in support of the Government's Motion to Dismiss and for Summary Judgment. In his affidavit, Long states that the purpose for selling stockpiled materials in an "as-is" condition is that materials are often stockpiled for great lengths of time, possibly for several decades, and GSA does not reexamine all the material at the time of disposal. "The GSA receives bids from knowledgeable buyers in the applicable industries who have an opportunity to inspect the materials where they are stored and the duty to ascertain if the quality of the materials they are bidding upon continues to be equal to that specified as originally purchased and then offered for sale by the GSA." Long Affidavit, at 3–4 ¶ 10.

Additionally, the Committee Reports concerning Public Law 89–422 contained the following statement:

Enactment of this legislation will result in no additional cost to the Federal Government but will result in substantial returns to the Federal Treasury as a consequence of the proceeds of the sale of the amosite asbestos now held in the national stockpile and supplemental stockpile.

Thus, the decision to sell the asbestos in unmarked crates to knowledgeable buyers involved a weighing of economic and other policy factors and falls within the discretionary function exception. *See Blessing v. United States*, 447 F.Supp. 1180–81 (E.D.Pa.1978). *See also, Dalehite*, 346 U.S. at 40–41, 73 S.Ct. at 970, where the Court recognized that although bagging the fertilizer at cooler temperatures might have decreased the likelihood of an explosion, it would have increased production costs. Thus economic considerations were involved which put the decision beyond the pale of the FTCA. Plaintiff's complaint states that the asbestos industry was knowledgeable of

the problems with asbestos by the early 1960's. In these circumstances, where the Government sells a product to a knowledgeable industry buyer, certainly the decision to sell so as to incur the least cost to the Government, i. e. not to incur the cost of warning an experienced and knowledgeable buyer, was a policy consideration and protected by the discretionary function exception.

This decision is not meant to reflect upon the merits of plaintiff's case as to any other defendant. I hold only that the United States is not liable to plaintiff under these circumstances because of the discretionary function exception to the FTCA.

The jurisdiction of this Court over North American Asbestos Corporation is based on ancillary jurisdiction; i. e., there is no independent jurisdictional basis over this defendant. Since this case has not proceeded to trial and since there is a state court suit pending against this defendant, this Court relinquishes its ancillary jurisdiction and dismisses this case as to North American Asbestos Corporation also.

Case dismissed.