James H. BARLIEB & Millie
Barlieb, h/w

v.

TURNER & NEWALL, LTD., et al.

John McFADDEN & Elizabeth
McFadden

v.

TURNER & NEWALL, LTD., et al.

Emilio E. CARDAMONE & Antoinette
Cardamone, h/w

v.

TURNER & NEWALL, LTD., et al.

Anthony GIRADI & Lucy Marie
Giradi, h/w

v.

TURNER & NEWALL, LTD., et al.

Victoria C. AMENTO, Administratrix of
the Estate of Joseph Amento,
Deceased

v.

TURNER & NEWALL, LTD., et al.

Louis GRABOWSKI & Helen
Grabowski h/w

v.

TURNER & NEWALL, LTD., et al.

Albert SAYLOR, et al.

v.

TURNER & NEWALL, LTD.

Margo Maggie L. GRAVATT, Adm. of
the Estate of Clifford Henry Gravatt,
Jr., Deceased

v.

JOHNS–MANVILLE CORP., et al.

Modesta C. MARINCOLA, Adm. of the
Estate of Paul G. Marincola, Deceased

v.

JOHNS–MANVILLE CORP., et al.

Civ. A. Nos. 78–1027, 78–1041, 78–1117,
78–1987, 78–2023, 78–3046, 79–1523,
79–4339 and 79–4340.

United States District Court,
E.D. Pennsylvania.

Nov. 26, 1980.

Edward Rubin, Hamburg, Rubin, Mullin & Maxwell, Lansdale, Pa., Thomas J. Mullaney, Jr., Philip D. Weiss, Norristown, Pa., for plaintiffs.

Swartz, Campbell & Detweiler, Philadelphia, Pa., for Certain Teed Corp. .

Patrick T. Ryan, Drinker, Biddle & Reath, Philadelphia, Pa., for Cassiar Asbestos Corp. Ltd.

Edward Greer, Philip H. Rush, Philadelphia, Pa., for GAF Corp.

John P. Mason, Philadelphia, Pa., for Turner & Newall, Ltd.

Kaliner & Joseph, Edward B. Joseph, Philadelphia, Pa., for Asbestos Corp., Ltd.

Francis E. Marshall, Philadelphia, Pa., for Canadian Johns-Manville Asbestos Ltd., Canadian Johns-Manville Co. Ltd. and Johns-Manville Sales Corp.

Theodore W. Flowers, Richard M. Jordan, White & Williams, Philadelphia, Pa., for Huxley Development Corp.

Anthony S. Minisi, Richard E. Levine, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for North American Asbestos Corp.

Cozen, Begier & O'Connor, Joseph A. Gerber, Philadelphia, Pa., for Lake Asbestos of Quebec.

Harvey, Pennington, Herting & Renneisen, G. Wayne Renneisen, Philadelphia, Pa., for Carey-Canadian Mines, Ltd.

Joan K. Garner, Asst. U.S. Atty., Philadelphia, Pa., Peter A. Nowinski, Trial Atty., Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for U.S.

Post & Schell, Robert M. Britton, Philadelphia, Pa., for Bell Asbestos Mines, Ltd.

McWilliams & Sweeney, Donald J.P. Sweeney, Philadelphia, Pa., for Special Asbestos Co., Inc.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

These cases have been consolidated for purposes of ruling on motions made by defendant United States, to dismiss or, in the alternative, to sever.[1]

Defendant United States moves, pursuant to Fed.R.Civ.P. 12(b)(1) and (6), for dismissal of cross-claims against it asserted by defendants who allegedly supplied asbestos to an asbestos cement pipe manufacturing plant in Ambler, Pennsylvania. Defendant asserts that this Court lacks subject matter jurisdiction, and that the cross claims fail to state claims upon which relief can be granted under Pennsylvania law.

Defendant United States was initially involved in these actions by virtue of plaintiffs' amended complaint, which asserts in Counts VI and VII that the Department of Health, Education and Welfare, as it was then known, and the Public Health Service negligently caused injury to asbestos workers by failing to warn them of the dangers inherent in their work after those dangers were or should have been known and discovered. Plaintiffs allege that the Department of Labor was negligent in not warning plaintiffs about the existing dangers, and in not enforcing the Walsh-Healy and Occupational Safety and Health Acts. Plaintiffs further allege that the Department of the Navy was negligent when it contracted with plaintiffs' employers to do work, which it knew or should have known was dangerous, and failed to warn plaintiffs. Finally, plaintiffs assert against the United States as a supplier of asbestos the same claims they assert against the corporate suppliers of asbestos: that defendants were negligent in failing to test or properly package their products; that defendants

---

1. Motions were filed under the caption *Clarence Johnson, et ux. v. Turner & Newall, Ltd., et al.,* C.A. No. 78–464. That case has settled. Also included in this group of cases in which the motions are made were Civil Actions 79–4337, 79–4338, 79–4341, 79–4342. Judgment has since been entered against plaintiffs in those cases.

were negligent in failing to warn plaintiffs; that defendants breached and implied warranty of merchantibility; that defendants' products were unreasonably dangerous and unsafe for their intended use; and that defendants conspired fraudulently to misrepresent the nature and the extent of the harm caused by exposure to asbestos. The corporate defendants filed cross-claims against the United States for contribution and indemnity.

Plaintiffs have joined the United States in the pending motions, representing that they will dismiss without prejudice their claims against the United States if the Court should decide to dismiss or sever the cross claims. The Court is therefore in the peculiar position of considering argument by defendants, opposed by the additional defendant, that the Court has jurisdiction to hear plaintiffs' claims. Clearly, if the Court has jurisdiction over any of plaintiffs' claims, wherein defendants and additional defendants may be joint tort feasors, then it has jurisdiction over defendants' cross-claims against the United States for contribution.

A. *Jurisdiction*

1. The Government as a Supplier of Asbestos

■ The United States argues that its activities do not fall within the exception to sovereign immunity marked out by the Federal Tort Claims Act. Rather, this Court is urged to find that the actions of the United States fall within an exception to that exception, the "discretionary function" protection retained by the United States under 28 U.S.C. § 2680.

Because plaintiffs' claims against the United States, and, derivatively, defendants' cross-claims are based on tort theories analysis must focus on the scope of the sovereign immunity of the United States. The United States, argue defendants, is liable because it has shed its sovereign immunity for these kinds of tort claims.

The Federal Tort Claims Act states in relevant part, the "United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. That provision is narrowed by subsequent language which states in relevant part that "the provisions of this chapter . . . shall not apply to—(a) any claim . . . [2] based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680.

As stated above, counts I, II, and III of plaintiffs' amended complaint (incorporated by reference in paragraph 22 of Count VI against the United States) allege that defendants sold asbestos to which plaintiffs were negligently exposed, in breach of implied warranties, and in violation of a "strict duty" imposed upon defendants as "producers, manufacturers, and commercial sellers" of asbestos.

The United States admits that in October, 1969, it sold "15 short tons" of crocidolite asbestos fiber to plaintiffs' employer. The United States has presented the Court with a detailed and thoroughly documented history of this sale, including the enabling statutes and orders: the Strategic and Critical Materials Stockpiling Act, 50 U.S.C. §§ 98 *et seq.*, the Federal Property and Administrative Services Act of 1949, 40 U.S.C. 471 *et seq.*, Reorganization Plan No. 1 of 1958, 23 F.R. 4991, 72 Stat. 1799, Executive Order No. 11051 (1962) *reprinted in* 50 App. U.S.C. § 2271. With regard to the sale of asbestos, in 1966, by Public Law 89–463, Congress authorized the Administrator of the General Services Administration to dispose of approximately 45,992 short tons of crocidolite asbestos held in stockpiles previously authorized by the statutes cited above. There seems to be no question that the sale of asbestos to plaintiffs' employer was authorized.

From all the affidavits offered by the United States it appears that there was extreme caution exercised by the government with regard to avoiding disruption of the usual markets for operating producers,

processors, and consumers. It is also clear that the government, by decree of Congress, sought to avoid any extra expense to itself. Therefore, the government dealt only with experienced asbestos handlers, "in the original packing, with the same makings and in basically the same condition as it was acquired and stored." (Declaration of John G. Harlan, Jr., then Commissioner of the Property Management and Disposal Service, at ¶ 10). The asbestos was therefore sold "as is" and F.O.B. carriers conveyance at the storage site.

The sale to Certain-Teed, plaintiffs' employer was typical. On October 15, 1969 a contract was executed for the sale of fifteen short tons of crocidolite asbestos to Certain-Teed. The written agreement stated "This is an 'as-is' sale," and the appended "General Terms and Conditions for the Sale of Strategic and Critical Materials" contained the following:

> Condition of Material. Unless otherwise specifically stated in the invitation, all material therein is offered "as is". The description of the material is based on the best information available to the Government. However, the Government makes no warranty, express or implied, as to the quantity, kind, character, quality, weight, size or description of the material or its fitness for any use or purpose.

At the outset, the Court notes that the precise issue presented in this case was decided in *Stewart v. United States*, 486 F.Supp. 178 (C.D.Ill.1980). In that case the judge held that

> The decision to sell the asbestos in unmarked crates to knowledgeable buyers involved a weighing of economic and other policy factors, and falls within the discretionary function exception.

486 F.Supp. at 184. With all due regard to the learned judge in *Stewart*, this Court must disagree with his conclusion.

Both the *Stewart* court and the government's memorandum of law describe the similarity between these cases and the case of *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). *Dalehite* is the leading case in the area, and indeed, as the government points out, there are striking factual similarities. In *Dalehite* the relevant issue was whether or not there was an exercise of discretion in the Army's decision not to label a dangerous substance as anything other than fertilizer. Here at least one claim is based on the government's sale of asbestos without proper warning. However, there are significant differences between the two cases. The most important difference occurs in the facts relevant to the most similar issue, failure to warn. That difference is that the Army in *Dalehite* was observing federal law when it chose to label ammonium nitrate as fertilizer. *Dalehite* 346 U.S. at 42, 73 S.Ct. at 971. By contrast, the only legislative or agency mandate in these cases was to protect "the United States against avoidable loss and ... producers, processors, and consumers against avoidable disruption of their usual markets." P.L. 89–463, 80 Stat. 213 (June 21, 1966).

Because the factual situation in *Dalehite* is not as clearly analogous as the government urges, the Court must attempt to analyze and apply the *Dalehite* interpretation of the discretionary function, i.e., that the exception was intended by Congress to immunize the United States from being "subject to liability arising from acts of a government nature or function." *Dalehite* at 28, 73 S.Ct. at 964.[2]

2. The Government urges the Court to avoid making a decision based on a "governmental—non-governmental" distinction, citing *Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1957) and *Rayonier v. United States*, 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957). In *Indian Towing* Justice Frankfurter wrote that once the Coast Guard exercised its discretion to operate a lighthouse, engendering reliance on the lighthouse,

it was obligated to make certain that the light was in good working order; and, if the light did become extinguished, then the Coast Guard was further obligated to use due care to discover this fact and to repair the light or give warning that the light was not functioning.

*Indian Towing*, at 69, 76 S.Ct. at 127. By analogy this Court reasons that once the government decided to sell asbestos, it was obligated to exer-

The Court notes that the subject of the scope of the discretionary function was considered here once before. In *Griffin v. United States*, 351 F.Supp. 10 (E.D.Pa. 1972), this Court held that the failure of an agency of HEW properly to screen out defective polio vaccines from those issued to the public was not a "discretionary function." In that decision the court quoted *Hendry v. United States*, 418 F.2d 774 (2d Cir.1969) at length. At the heart of that quotation is the observation,

> "it is pertinent to inquire whether the complaint attacks on the one hand the nature of rules which a government agency has formulated, or on the other hand the way in which these rules are applied. It is clear that § 2680(a) was intended to protect the validity of governmental regulations from challenge in a tort action for damages."

*Griffin* at 31. In affirming the decision of this Court, the Court of Appeals cited *Dalehite* for the proposition that "To determine the applicability of the discretionary function exception ... we must analyze not merely whether judgment was exercised but also whether the nature of the judgment called for policy considerations." *Griffin v. United States*, 500 F.2d 1059, 1064 (3d Cir.1974).

Since deciding that case, the Court of Appeals for this circuit has both reaffirmed that analysis, *Bernitsky v. United States*, 620 F.2d 948 (3d Cir.1980) and warned that "these distinctions may provide some guidance in explaining the result of the cases, [but] they do not offer much assistance in the determination whether the activity in question in a particular case falls on the side of liability or immunity." *Bernitsky* at 951.

What were the putative policy considerations of the government in this case? Certainly the decision to sell the asbestos was one. It is, however the *manner* in which the asbestos was sold that might impose liability on the United States. The question therefore is whether or not the decision to sell the asbestos *without warning* was a "discretionary function." As noted above, the court in *Stewart* said that the decision to sell the asbestos in unmarked crates to knowledgeable buyers involved "a weighing of economic and other policy factors." *Stewart*, 486 F.Supp. at 184. Certainly the cost factors were present, but they were precisely the cost factors involved in any sale: repackaging, transportation and so forth. In fact, the weighing of "policy" consideration as we understand them in the context of governmental function ended when the decision to sell was made in a manner that would not disturb the usual markets for asbestos. Any subsequent activity on the part of the government created exactly the kind of "like circumstances" anticipated by the Federal Tort Claims Act, and the government should be treated, as Congress intended, as any private entity.

The Court will however, dismiss counts against the government that allege strict liability claims. *See* Count III, Plaintiffs' Complaint, paragraph 22, incorporated in Count VI against the United States. *Dalehite*, at 45, 73 S.Ct. at 972. *See Laird v. Nelms*, 406 U.S. 797, 92 S.Ct. 1899, 32 L.Ed.2d 499 (1972)[3].

## 2. The Government as Regulatory Agency and as Contractor

### a. The Public Health Service

■ The government moves for dismissal of claims against it arising from an alleged failure of the Public Health Service to warn plaintiffs of the danger inherent in

---

cise due care to protect the public. Whether or not it did so is a question of fact to be determined at trial.

**3.** Both *Dalehite* and *Nelms* involved strict liability in the context of "ultra-hazardous" activities, and therefore, strictly speaking, may not enunciate a rule of strict liability for products that are not "ultra hazardous." The Court in *Dale-*

*hite* did however state the rule broadly: "the Act does require some brand of misfeasance or nonfeasance, and so could not extend to liability without fault." *Dalehite* at 45, 73 S.Ct. at 972. *See also Smith v. United States*, 621 F.2d 873 (7th Cir.1980), *Aretz v. United States*, 604 F.2d 417 (5th Cir.1980).

working near asbestos (Count VI, paragraph 24) either after inspection of the job sites or through public dissemination of information about asbestos.

The Public Health Service was authorized to conduct research and investigations, 42 U.S.C. § 216(b), and, with the authority of the Secretary of Health, Education and Welfare, to issue "regulations necessary to the administration of the Service...." 42 C.F.R. § 1.103(c)(2) (1978).

The Court concludes that the decision not to disseminate information about asbestos was a discretionary function. *See Blessing v. United States*, 447 F.Supp. 1160, 1178 n. 26 (E.D.Pa.1978).

### b. Department of Labor

Plaintiffs allege that employees of the Department of Labor negligently failed to warn plaintiffs of "critical health hazards," which should have been discovered through inspections carried out in the enforcement of the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 *et seq.*, and the Walsh-Healy Public Contracts Act, 41 U.S.C. § 35 *et seq.*, and that those acts were not properly enforced.

The Court finds the case of *Bernitsky v. United States*, 620 F.2d 948 (3d Cir.1980) to be controlling, and that these allegations against the United States must be dismissed.

### c. Department of the Navy

Paragraph 26 of plaintiffs' complaint alleges that the Navy was negligent when, having contracted with plaintiffs' employer, it failed to warn plaintiffs of the health hazards inherent in that work.

■ At the outset the Court notes that there is a specific independent contractor exemption under the Federal Torts Claims Act, 28 U.S.C. § 2671 *et seq.* In light of this, these claims against the United States should be dismissed. Insofar as plaintiffs allege that the government is liable as a contractor who cannot delegate its duty to provide a safe workplace, these claims will be dismissed because there must be some

negligence on the part of the government. *Laird v. Nelms*, 406 U.S. 797, 92 S.Ct. 1899, 32 L.Ed.2d 499 (1972).

The Court is fully aware of the phrasing of plaintiffs' complaint as alleging the tort of "failure to warn." In this context, however, where the government operates as a contractor and not as a supplier, failure to warn is inapplicable.

### 3. Jurisdiction under the Tucker Act

■ The government alleges that plaintiffs' claims based on contract law—breach of warranties of merchantability and fitness for an intended purpose—must be heard in the Court of Claims, because damages sought are in excess of ten thousand dollars. 28 U.S.C. § 1491. Were plaintiffs' claims based entirely on contract theories, this motion for dismissal would be appropriate. Where, as here, plaintiffs' theories are hybrid, dismissal is inappropriate.

Similarly, the government states that because under Pennsylvania law the cross-claims of contribution are founded on implied contracts, that the cross-claims should be dismissed.

The Pennsylvania law of contribution is governed by statute, 42 Pa.Cons.Stat.Ann. § 8324 (1978), reenacting 12 Pa.Stat.Ann. § 2083. The right to contribution is based on both equity and law; the right in equity is based on "principles of natural justice", *In re Mellon's Estate*, 347 Pa. 520, 32 A.2d 749 (1943), and action at law sounds in quasi-contract. *W.D. Rubright Co. v. International Harvester Co.*, 358 F.Supp. 1388 (E.D.Pa.1973). The government's exceedingly formalistic argument is inadequate—the right to contribution is statutory, and it is based, historically, on both implied contract theories *and* equitable principles. Therefore the Court of Claims cannot have exclusive jurisdiction over the cross-claims.

### 4. Punitive Damages

Plaintiffs' demand for punitive damages from the government is dismissed. 28 U.S.C. § 2674.

### 5. Conspiracy Claims

Count VII of plaintiffs' complaint alleges that defendants, including the government, conspired fraudulently to misrepresent the dangers inherent in working with asbestos. Misrepresentation and fraud claims against the government are not permitted under the FTCA. 28 U.S.C. § 2680(h).

### 6. Indemnity

The government accurately asserts that defendants' cross claims for indemnity against the government are barred, under Pennsylvania law, by defendants' active participation in supplying asbestos to Certain-Teed. Therefore defendants' cross-claims for indemnity will be dismissed.

### B. *Severance*

The government moves for severance of actions and cross claims against it. Because of the conclusions reached above and the order to be filed today, this motion will be denied. The government correctly asserts that claims against it must be heard by the Court. Nevertheless, trials in these cases will proceed more efficiently if the government, as merely another supplier, presents its defenses simultaneously with the corporate defendants' defenses. The Court will be able to consider the government's liability directly to plaintiffs or in contribution to the other defendants after a jury verdict has been given regarding the corporate defendants.

The Court notes that in individual cases it may appear at some future date that issues of proof are sufficiently dissimilar that severance may be appropriate. On the present record, however, the Court cannot so conclude.

### C. *Conclusion*

After today's order, the United States will remain as a party defendant in the above-captioned cases, but on a much reduced scale. After today, the government will be involved as a supplier, and as a supplier, it may be liable in *negligence* for those damages "in the same manner and to the same extent as a private individual under the circumstances." 28 U.S.C. § 2674.