UNITED STATES of America, Plaintiff,

v.

OIL SCREW GULF PRINCESS II, Her Engines, Tackle, Apparel, and Equipment, in rem, Defendants,

v.

COASTAL PRODUCTION CREDIT ASSOCIATION, Intervening Defendant.

Civ. A. Nos. 80–2247–8, 80–2560–8.

United States District Court,
D. South Carolina,
Charleston Division.

July 28, 1982.

Henry Dargan McMaster, U. S. Atty., Columbia, S. C., for plaintiff.

Robert E. Moseley, Ellison D. Smith, IV, Charleston, S. C., for defendants.

Gordon D. Schreck, Charleston, S. C., for intervening defendant.

## ORDER

BLATT, District Judge.

These consolidated matters are before the court upon the parties' cross motions for summary judgment under Fed.R.Civ.Pro. 56. In Civil Action No. 80–2247–8—(mortgage foreclosure action)—Coastal Production Credit Association (CPCA) seeks to foreclose its preferred ship mortgage on the Oil Screw Gulf Princess II (Gulf Princess II), proceeding *in rem* against the ship, and *in personam* against William I. Graham, the owner of the ship, and the United States of America, the holder of the ship after its seizure by the Coast Guard. In Civil Action No. 80–2560–8—(forfeiture action)—the United States seeks to condemn the Gulf Princess II pursuant to 21 U.S.C. § 881(a) for violation of federal drug laws. The United States, through the Department of Justice, has granted a petition for remission filed by CPCA as intervenor in the forfeiture action, see 19 C.F.R. § 171.12(b), recognizing CPCA's valid preferred ship mortgage on the Gulf Princess II and protecting that interest from forfeiture. Consequently, the mortgage foreclosure action has been stayed and consolidated with the forfeiture action, pending resolution of various legal issues surrounding the forfeiture of the Gulf Princess II.

The Gulf Princess II was seized on August 30, 1980, by the United States Coast Guard for violation of federal drug laws, after marijuana residue was discovered on board. The owner of the vessel, William I. Graham, who has also intervened in the forfeiture action, concedes that the vessel is otherwise forfeitable as alleged in the government's complaint, but contends by way of defense that the government's delay in instituting the forfeiture action has violated his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution, thereby entitling him to the return of the vessel, as well as money damages. Additionally, Graham's answer purports to assert certain other defenses, but, with the exception of his due process defense, these defenses have subsequently been abandoned.[1] The United States now seeks summary judgment of its forfeiture action under Fed.R.Civ.Pro. 56(a), and Graham has similarly moved for summary judgment of his due process defense under Fed.R.Civ.Pro. 56(b).

The essential facts in this case are not in dispute, counsel having jointly filed a stipulation of facts on June 15, 1981. As previously stated, the Gulf Princess II was seized by the Coast Guard on August 30, 1980. On September 8, 1980, notice of this seizure was mailed to all interested parties, including William I. Graham. On October 15, 1980, a petition for remission was filed by CPCA. *See* 19 C.F.R. § 171.12(b). On November 18, 1980, the investigative report concerning the seizure was completed by the United States Customs Service; that report was received by the United States Attorney's office in Charleston, South Carolina, on November 28, 1980. The present forfeiture action was instituted on December 31, 1980, by the filing of a summons and complaint by the United States Attorney.

Under 21 U.S.C. § 881(d), the general statutory provisions concerning seizures and

---

1. Graham's answer also asserts a counterclaim seeking money damages from the government predicated on the same theoretical basis as his due process defense to the forfeiture action. This counterclaim has not been abandoned; however, despite the theoretical similarity between the defense and the counterclaim, the counterclaim is not presently before this court on these summary judgment motions, and the court expressly declines to reach the merits of the counterclaim at this time.

forfeitures for violations of customs laws, *see* 19 U.S.C. §§ 1602 *et seq.*, are made applicable to seizures and forfeitures for violation of federal drug laws. Thus, under 19 U.S.C. § 1602, the government officer who makes the seizure is required to "report immediately" that seizure to the appropriate supervisor. Under 19 U.S.C. § 1603, that supervisor is under a duty to "report promptly" to the United States Attorney the factual circumstances surrounding the seizure. *See also* 19 U.S.C. § 1610 ("a report of the case" must be prepared by the appropriate supervising officer if the value of the seized property is "greater than $10,000"). Finally, Section 1604 provides, *inter alia*, that

> [i]t shall be the duty of every United States attorney immediately to inquire into the facts of cases reported to him . . . and [if forfeiture proceedings are necessary] . . . forthwith to cause the proper proceedings to be commenced and prosecuted, without delay. . . .

19 U.S.C. § 1604.

In addition to this statutory language, it is well established that the due process clause proscribes unreasonable delay in the institution of forfeiture proceedings. *E.g., United States v. One Motor Yacht Named Mercury, etc.*, 527 F.2d 1112 (1st Cir. 1975); *Sarkisian v. United States*, 472 F.2d 468 (10th Cir. 1973), *cert. denied*, 414 U.S. 976, 94 S.Ct. 291, 38 L.Ed.2d 219 (1973). As in other jurisdictions, however, the Fourth Circuit Court of Appeals has refused to adopt a *per se* rule with respect to the statutory requirement of immediacy.

> [W]hether or not the requirement of "immediate" action is satisfied in any given case will depend upon factors such as the length of time necessary for an investigation by Customs officers and whether delay in the proceedings is caused by the claimant.

*States Marine Lines, Inc. v. Shultz*, 498 F.2d 1146, 1155 (4th Cir. 1974). Clearly, "resolution is to occur on a case-by-case basis. . . ." *United States v. One 1976 Cadillac Coupe DeVille Automobile, etc.*, 620 F.2d 295 (4th Cir. 1980) (unpublished opinion).

In asserting his due process defense, Graham advances three separate arguments. First, Graham contends that the four-month delay between seizure of the Gulf Princess II and institution of forfeiture proceedings violated the immediacy requirements under the relevant statutory and constitution provisions; second, he contends that the one month delay between receipt of the completed Customs Service report by the United States Attorney's office and institution of forfeiture proceeding violated those same immediacy requirements; and finally, he contends that the motive of the United States Attorney's office in delaying institution of forfeiture proceedings during December, 1980, constituted an abuse of that office's discretion and violated the intent of the immediacy requirements. After careful consideration of the factual circumstances of this case, the court is convinced that the government has complied with the pertinent statutory requirements in instituting forfeiture proceedings against the Gulf Princess II and that the owner's due process rights under the Fifth and Fourteenth Amendments to the United States Constitution have been adequately protected.

■ Of course, although it is not determinative in itself, the most important factor to be considered with respect to the due process defense is the length of time between seizure and institution of forfeiture proceedings. Here, that interval was four months. The cases which hold particular intervals violative of the constitutional and statutory immediacy requirements all involve considerably longer periods of delay. *E.g., United States v. One 1976 Cadillac Coupe DeVille Automobile, etc.*, 620 F.2d 295 (4th Cir. 1980) (eight months); *United States v. One 1970 Ford Pickup, etc.*, 564 F.2d 864 (9th Cir. 1977) (eleven months); *United States v. One Motor Yacht Named Mercury, etc.*, 527 F.2d 1112 (1st Cir. 1975) (twelve and one-half months); *States Marine Lines, Inc. v. Shultz*, 498 F.2d 1146 (4th Cir. 1974) (more than twelve months); *Sarkisian v. United States*, 472 F.2d 468 (10th Cir. 1973) (fourteen months); *United*

*States v. One Opel G.T. Engine, etc.*, 360 F.Supp. 638 (C.D.Cal.1973) (thirteen and one-half months). A thorough review of the decisional law does not reveal any case holding an interval comparable to the one here unreasonable; indeed, several cases have found delays of more than four months to be reasonable and consonant with the statutory and constitutional immediacy requirements. *United States v. One 1973 Buick Riviera Automobile, etc.*, 560 F.2d 897 (8th Cir. 1977) (five months); *United States v. One 1972 Wood, 19 Ft. Custom Boat, etc.*, 501 F.2d 1327 (5th Cir. 1974) (nine months); *United States v. One 1973 Ford LTD, etc.*, 409 F.Supp. 741 (D.Nev.1976) (fourteen months). Standing alone, the delay between seizure and institution of forfeiture proceedings in the instant case does not suggest that the government has failed to comply with the statutory and constitutional immediacy requirements.

Another factor pertinent to this court's inquiry concerning the reasonableness of the delay here is "the length of time necessary for an investigation by Customs officers...." *States Marine Lines, Inc. v. Shultz*, 498 F.2d 1146, 1155 (4th Cir. 1974). Under 19 C.F.R. § 171.12(b), any interested person is allowed sixty days from the notice of seizure to file a petition for remission or mitigation. Once a petition is received, the internal regulations of the United States Customs Service require that an investigation be conducted within thirty days. In the present case, CPCA filed a petition for remission on October 15, 1980, and the Customs Service's investigative report was received by the United States Attorney's office on November 28, 1980. Although the Customs Service took a total of forty-four days to complete the investigation, prepare the report, and transmit that report to the United States Attorney's office, this court does not view that delay as significant in light of the scope of such an investigation

in a marijuana smuggling case, involving numerous parties and a wide geographical range of activities, as well as the intervening holiday season. Thus, the length of time necessary for the Customs Service investigation here was not unreasonable. *See, e.g., United States v. One 1970 Ford Pickup, etc.*, 564 F.2d 864 (9th Cir. 1977).

The final factor to be considered by the court is the claimant's role in any delay between seizure and institution of forfeiture proceedings. This factor has both a positive and negative aspect. In *States Marine Lines, Inc. v. Shultz*, 498 F.2d 1146 (4th Cir. 1974), the court posed the question as "whether delay in the proceedings is caused by the claimant." *Id.* at 1155. In the instant case, it is uncontrovertible that Graham did not engage in any affirmative conduct that caused delay in the administrative proceedings. However, in *United States v. One 1976 Cadillac Coupe DeVille Automobile, etc.*, 620 F.2d 295 (4th Cir. 1980), the court emphasized the relevance of claimant's activities that are intended to stimulate the expedient completion of the investigative phase and the prompt institution of judicial forfeiture proceedings. *Id.* at 11 ("the record in this case establishes that ... [claimant's] attorney ... made it clear that he was not content to allow proceedings on the petition for remission or mitigation to run their languid course"). The considerable activities of claimant and his attorney in that case, *see id.* 2–6, which induced the district judge to note that " '[n]obody could have been fighting harder for a prompt disposition ...,' " *id.* at 11, stand in stark contrast to the total absence of comparable activities in the present case.[2] Thus, while Graham did not cause any delay in the proceeding, *see States Marine Lines, Inc. v. Shultz*, 498 F.2d 1146 (4th Cir. 1974), his activities were not calculated to result in the most expedient disposition of the case and they certainly did not rise to the level of those in *United States v. One*

---

**2.** Indeed, the determinative factor in *United States v. One 1976 Cadillac Coupe DeVille Automobile, etc.*, 620 F.2d 295 (4th Cir. 1980), which involved a relatively short delay of eight months between seizure and institution of for-

feiture proceedings, seems to be claimant's dogged attempts to prod the government's administrative bureaucracy into reaching a final disposition of the case.

*1976 Cadillac Coupe DeVille Automobile, etc.*, 620 F.2d 295 (4th Cir. 1980).

After a careful review of these factors, this court is firmly convinced that the four-month delay between seizure and institution of forfeiture proceedings here did not violate the immediacy requirements imposed by the relevant statutory and constitutional provisions. Nonetheless, Graham's motion for summary judgment also raises certain other issues that must be addressed. Basically, Graham contends that the motive of the United States Attorney's office in failing to immediately institute judicial forfeiture proceedings after receipt of the Customs Service's report on November 28, 1980, violates the intent of the immediacy requirements and constitutes an abuse of that office. Although Graham was never indicted on criminal charges stemming from the apparent involvement of the Gulf Princess II in a marijuana smuggling venture, the government has conceded, quite candidly, that he was under investigation during this time and that the unencumbered vessel would have given them additional leverage in dealing with Graham had he become a criminal defendant.[3] While the court accepts the veracity of this concession, it is not relevant to the court's inquiry here in light of the finding that the interval between seizure and institution of forfeiture proceedings did not constitute an unreasonable delay under the statutory and constitutional immediacy requirements. When these immediacy requirements are fulfilled, it is irrelevant to inquire why the government did not fulfill them faster; that is to say, the government's motive, under the circumstances of this case, cannot render an otherwise reasonable delay unreasonable. This is especially true in the context of the relatively brief intervals between seizure, completion of the investigative report, and institution of forfeiture proceedings. Even

though "[t]he preparation and the complaint involved no time-consuming difficulties," *United States v. One 1976 Cadillac Coupe DeVille Automobile, etc.*, 620 F.2d 295 (4th Cir. 1980); *see, e.g., Castleberry v. Alcohol, Tobacco and Firearms Div. of the Treasury Dept.*, 530 F.2d 672, 676–77 (5th Cir. 1976), the investigation of the case by the United States Attorney's office and the drafting and filing of the complaint would involve some time and effort, particularly in light of the intervening holiday season. Regardless of the government's motive, an interval of thirty-four days between receipt of the Customs Service's investigative report and institution of forfeiture proceedings is not unreasonable.

For the foregoing reasons, the government's motion for summary judgment is granted, and Graham's motion for summary judgment is denied.

AND IT IS SO ORDERED.

---

**3.** Reflecting this concession by the Assistant United States Attorney at the motion hearing, the government's proposed order states:

[T]he government admits at least some delay between November 28 and December 31 [was] caused by their wish to keep the vessel unencumbered by any civil forfeiture action.

The government frankly admits its purpose was to allow for more criminal investigation of Graham and perhaps to be able to have the vessel as a bargaining tool in subsequently dealing with Graham as a criminal defendant.

