**Bernard Shaney WILLIS, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 82 C 5999.**

United States District Court, N.D. Illinois, E.D.

Jan. 11, 1985.

Anna R. Lavin, Chicago, Ill., for plaintiff.

Elizabeth Stein, Asst. U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

In this suit, plaintiff Bernard Shaney Willis seeks damages and equitable relief from defendant United States of America, to redress alleged violations of his fourth and fifth amendment rights resulting from a seizure of his car by officers of the Drug Enforcement Administration (the "D.E.A.") pursuant to 21 U.S.C. § 881(a)(4). Plaintiff attempts to invoke, and to the extent that damages do not exceed $10,000, defendant purports to "concede," jurisdiction under the Tucker Act, 28 U.S.C. § 1346(a)(2). We find, however, that plaintiff has not stated a cause of action cognizable under the Tucker Act because the fourth amendment and due process clause of the fifth amendment do not give rise to a cause of action directly against the United States of America for money damages. Furthermore, plaintiff cannot maintain this suit under general federal question jurisdiction, 28 U.S.C. § 1331, because the action is barred by the doctrine of sovereign immunity. Plaintiff's equitable claims, however, are cognizable because of the creation of a cause of action and waiver of sovereign immunity by the Administrative Procedure Act, 5 U.S.C. § 702. On the merits, however, we grant defendant's motion for summary judgment and deny plaintiff's cross-motion for summary judgment because we find that plaintiff has not alleged any cognizable violations of his constitutional rights.

### Background

The uncontested facts in this case are as follows. On August 4, 1981, D.E.A. agents seized plaintiff's 1977 Chevrolet Corvette. On August 24, 1981, plaintiff received a letter from an officer of the D.E.A. advising him first, that the car had been seized pursuant to 21 U.S.C. § 881(a)(4), subjecting to forfeiture vehicles used to transport controlled substances; second, that the appraised value of the vehicle was $8,000.00; and third, that plaintiff had the right to petition for remission or mitigation, or contest probable cause, in the following manner:

If it is your intention to file a petition for remission or mitigation of forfeiture, it must be filed in triplicate with this office within 30 days from the date of this letter and must conform to the requirements outlined in the above cited authorities.

If you intend to place the matter in the United States District Court to contest the probable cause for this seizure, a claim and cost bond of $250.00 must be filed with this office on or before Sep-

tember 16, 1981. Indigent persons who desire to place the matter before the court, but who are unable to post the $250.00 bond, may file an Affidavit of Indigency. Further information on this is available from the Drug Enforcement Administration.

If you have any questions regarding the above, please contact Anita L. Paryga at (312) 353–1017.

In response, on September 21, 1981, plaintiff, through an attorney, filed a "Petition for Remission of Seized Property" in which plaintiff claimed that neither he nor his vehicle had been involved in unlawful activity and that the seizure of his car by the D.E.A. had deprived plaintiff of his fifth amendment due process rights. Plaintiff asked for immediate return of the car.

On January 7, 1982, a D.E.A. attorney responded by letter to plaintiff's then-attorney, stating that "[t]he petition is denied since the facts reveal that the petitioner was involved in the use of the vehicle in violation of the law." Seven months later, plaintiff's present counsel wrote to the D.E.A. requesting information about the matter. A D.E.A. attorney replied, stating that D.E.A. reports revealed that the car had been used to transport cocaine, but that plaintiff's failure to file a claim and bond to contest probable cause ended his right to a hearing on the matter. The vehicle remains in storage with the government.

Plaintiff alleges several grounds for relief. In Count I, plaintiff claims that the government violated his fourth and fifth amendment rights because there was no "reasonable cause" for the seizure. In Count II, plaintiff claims that he was not given fair warning that he would be deemed to have waived the opportunity to contest probable cause by failing to post bond, and that as a layman he took "all prudent steps within his limited power" to protect his interests and relied on the expertise of his lawyer. Plaintiff requests that this court use its supervisory powers to protect plaintiff and others in his position "against surreptitiously implied waiver." In Count III, plaintiff claims and seeks a declaratory judgment to the effect that 28 C.F.R. § 9.4, the regulation that establishes procedures for claimants to petition for remission or mitigation but provides that a hearing is not available, fails to conform to the seizure provisions for violations of customs laws, 19 U.S.C. § 1618, and thereby derogates the statutes it purports to implement, 21 U.S.C. §§ 871, 881(d). These statutes make applicable to narcotics-related seizures the customs laws seizure provisions. Plaintiff alleges that in his case, without a hearing, officers of the defendant failed to ascertain the relevant facts, denying him due process of law. Count IV duplicates Counts I and III. In Count V, plaintiff alleges that the almost four-month interval between plaintiff's filing of his petition for remission and the notification of denial by the D.E.A. violated a requirement of the due process clause for immediate review of summary seizure proceedings. Plaintiff requests as relief on all counts the return of his car, and damages to cover the car's depreciation value, interest, plaintiff's loss of the use of the car, costs in trying to retrieve it, costs of suit and attorney's fees.

*Jurisdiction*

The threshold question to be considered in this or any suit against the United States is whether or not the defendant has waived its sovereign immunity. "It long as been established, of course, that the United States, as sovereign, 'is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain that suit.'" *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976) (*quoting United States v. Sherwood,* 312 U.S. 584, 587–588, 61 S.Ct. 767, 770–71, 85 L.Ed. 1058 (1944)). Since Congress alone can waive the United States' sovereign immunity, *see United States v. United States Fidelity Co.,* 309 U.S. 506, 513, 60 S.Ct. 653, 657, 84 L.Ed. 894 (1940); 14 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3654 at 157–158 (1976), this court cannot take the government's failure in this case

to contest jurisdiction as a waiver but must raise the immunity question *sua sponte.*

The parties erroneously assume that this court can entertain this suit under the Tucker Act. That Act provides in relevant part,

§ 1346. United States as defendant.

(a) The district courts shall have original jurisdiction, concurrent with the United States Claims Court, of: ...

(2) Any ... civil action or claim against the United States ... not exceeding $10,000 in amount, founded either upon the Constitution, or any act of Congress, or any regulation of an executive department. ...

28 U.S.C. § 1346(a)(2). Despite the apparent applicability of its language to plaintiff's lawsuit, the Tucker Act does not give this court jurisdiction over either plaintiff's equitable or his legal claims.

■ As to plaintiff's equitable claims, due to the fact that the Tucker Act establishes district court jurisdiction concurrent with that of the Court of Claims, a court without equitable powers in matters of this kind, the Act "empowers district courts to award damages but not to grant injunctive or declaratory relief." *Lee v. Thornton,* 420 U.S. 139, 140, 95 S.Ct. 853, 854, 43 L.Ed.2d 85 (1975); *See Richardson v. Morris,* 409 U.S. 464, 465–466, 93 S.Ct. 629, 630–31, 34 L.Ed.2d 647 (1973). Hence, the government has not by the Tucker Act consented to plaintiff's suit to the extent that it requests equitable relief (return of the car), a declaratory judgment, or exercise of this court's supervisory powers.

■ As to plaintiff's claims for money damages we find no source for such a cause of action under the Tucker Act. The Supreme Court has determined that the Tucker Act simply waives sovereign immunity as to substantive rights found in other sources of law, and does not itself create any substantive rights. *See United States v. Mitchell,* 463 U.S. 206, 103 S.Ct. 2961, 2965–66, 77 L.Ed.2d 580 (1983). Accordingly, plaintiff's complaint does not state a claim under the Tucker Act unless an independent source for it exists in the law. We recognize that the Court of Appeals for the

Seventh Circuit has left an open question as to the power of a district court to decide *sua sponte* whether or not a complaint states a claim upon which relief can be granted. *Merrill Tenant Council v. United States Department of Housing and Urban Development,* 638 F.2d 1086, 1094 (7th Cir.1981). As we read *Mitchell,* though, the Tucker Act waives sovereign immunity only as to specific claims based in other sources of law, and where no such source exists, sovereign immunity bars a court from exercising subject matter jurisdiction over a complaint. Parties cannot waive defects in subject matter jurisdiction: "[w]henever it appears by suggestion of the parties *or otherwise* that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed.R. Civ.P. 12(h)(3) (emphasis added). As a result, we must *sua sponte* inquire whether or not an independent source of law creates a substantive right for damages by which plaintiff's complaint states a claim under the Tucker Act.

■ The fact that plaintiff's claims invoke constitutional guarantees does not suffice, for "the claimant must demonstrate that the source of substantive law he relies upon 'can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained.'" *Id.* (citations omitted). For a source of a cause of action such as this one to be found, in other words, the question is not simply whether or not the government violated plaintiff's fourth or fifth amendment rights, but, rather, whether or not those provisions of the Constitution can fairly be read as creating a cause of action for money damages against the government.

We believe that neither constitutional provision can be so read. On its face, neither provision suggests that the government is liable for monetary compensation, as does for example the just compensation clause of the fifth amendment. This facial reading is confirmed by the reasons given by the United States Supreme Court for the creation of the *Bivens* doctrine in *Bivens v. Six Unknown Named Agents of*

*the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), under which a damage remedy exists against federal officers for injuries resulting from violations of fourth amendment rights.

In announcing the existence of the *Bivens* remedy, the Supreme Court was guided by the principle that federal courts must " 'be alert to adjust their remedies so as to grant the necessary relief' " when federally protected rights are violated, *id.* at 392, 91 S.Ct. at 2002 (*quoting Bell v. Hood,* 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946)), because " '[t]he very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury,' " *id.* 403 U.S. at 397, 91 S.Ct. at 2005 (*quoting Marbury v. Madison,* 5 U.S. 137, 1 Cranch 137, 163, 2 L.Ed. 60 (1803)). The Court rejected the defendant agents' position that state tort law provides an adequate redress for injuries resulting from violations of the fourth amendment. *Id.* 403 U.S. at 390–95, 91 S.Ct. at 2001–04. As a result, the Court concluded that fourth amendment rights must carry a corresponding remedy against offending officers for money damages.

This result would have been anomalous if it were the case that the fourth amendment gave rise to a cause of action directly against the United States for money damages. Then, the Tucker Act would waive sovereign immunity as to such suits. Federal courts would not have had to "adjust their remedies" to admit the *Bivens* remedy if another, in fact preferable, avenue of relief, against the government itself, were open. Clearly, the *Bivens* Court did not consider such a cause of action to be available under, let alone mandated by, the fourth amendment; indeed, Justice Harlan specified in concurrence, "[h]owever desirable a direct remedy against the Government might be as a substitute for individual official liability, the sovereign still remains immune to suit," *id.* at 410, 91 S.Ct. at 2012 (Harlan, J., concurring).

The same analysis applies to the due process clause of the fifth amendment. The Supreme Court has extended *Bivens* to

recognize a cause of action for damages against federal officers for violations of the "equal protection component" of the due process clause, *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), as has the Court of Appeals for the Seventh Circuit for the "due process" component of the due process clause, *see e.g. Lojuk v. Quandt,* 706 F.2d 1456, 1468–69 (7th Cir.1983). From these holdings we derive the same negative inference as to the availability of relief directly from the government under the due process clause as we derive with regard to the fourth amendment from *Bivens* itself. Thus, we believe, as several courts have implied or held, *see DeVilbiss v. Small Business Administration,* 661 F.2d 716, 718 (8th Cir. 1981); *Duarte v. United States,* 532 F.2d 850, 852 (2d Cir.1976), that the fifth amendment does not clearly contemplate redress in the form of damage suits directly against the government.

An alternative source for this cause of action could be found in the forfeiture laws themselves if they carry an implied right of action of the sort sought by plaintiff here. We see no basis, though, for implying a distinct right of action under these statutes which provide explicitly for claimants to post bond and claim seized property in the context of civil forfeiture actions, *see* 19 U.S.C. §§ 1608, 1615 (made applicable to 21 U.S.C. § 881(a)(4) by 21 U.S.C. § 881(d)); 21 C.F.R. §§ 1316.76, 13416.78.

Admittedly, the Court of Appeals for the Seventh Circuit at one time held that an individual convicted in violation of the due process clause could sue the government under the Tucker Act to recover the value of a vehicle forfeited pursuant to the erroneous conviction. *Pasha v. United States,* 484 F.2d 630, 633 (7th Cir.1973). It is unclear whether the court believed that the action was founded on the fifth amendment or on the forfeiture statutes. In either case, we do not consider *Pasha* to be binding precedent. The decision predated and we believe was effectively reversed by the subsequent Supreme Court interpretation

of the Tucker Act as being merely jurisdictional and requiring an independent source of a substantive right to recover damages, *see United States v. Mitchell,* 463 U.S. 206, 103 S.Ct. 2961, 2965–66, 77 L.Ed.2d 580 (1983); *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). Similarly, we disagree with a body of law from various circuits assuming, without due consideration of the source of the substantive right, that unlawful forfeiture claims state a cause of action under the Tucker Act. *See e.g., Simons v. United States,* 497 F.2d 1046, 1049 (9th Cir. 1974); *Lowther v. United States,* 480 F.2d 1031, 1035 (10th Cir.1973).

Accordingly, we hold that plaintiff has failed to state a claim under the Tucker Act. We proceed to consider whether any other statutes waive sovereign immunity and provide plaintiff with a cause of action in this suit.

■ We examine the Federal Torts Claims Act ("FTCA") which gives district courts jurisdiction over

> civil actions on claims against the United States, for money damages ... for injury or loss of property ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). Despite the seeming applicability of this statutory language, we doubt that Congress intended by this statute to create a federal cause of action and waive sovereign immunity for constitutional challenges such as this case. Again, we note the absence of consideration of the FTCA by the *Bivens* Court in its examination of the unavailability of an adequate remedy for violations of constitutional rights. Admittedly, the FTCA would have presented the same insufficiencies as state tort law; nonetheless, if the FTCA were applicable, then the Court's failure so to mention in its discussion of state tort law would have been an odd omission. *But see*

*Fayerweather v. Bell,* 447 F.Supp. 913, 915–16 (M.D.Penn.1978) (federal prisoner claiming that prison personnel negligently lost his property in violation of fifth amendment states cause of action under FTCA).

Moreover, we do not believe that plaintiff's allegations both suggest "circumstances where the United States, if a private person, would be liable to the plaintiff" and avoid the exceptions carved out of the FTCA by Congress. For the sake of analysis we divide plaintiff's complaint into two components: a claim that DEA agents took his car without cause, and a claim that after the seizure, plaintiff did not receive the process he was due.

■ The first component, which resembles the tort of conversion as between private parties, is, we believe, exempted from FTCA coverage by the "Exceptions" clause, which specifies that

> The provisions of ... section 1346(b) of this title shall not apply to—
>
> (a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid....

28 U.S.C. § 2680. The gravamen of plaintiff's "conversion" complaint is not that the D.E.A. agents took his property without statutory authority, but rather that the statutes and regulations which authorized the seizure are unconstitutional on their face or as applied to him. The FTCA is an improper vehicle for such a complaint; "the primary purpose of [the § 2680(a)] exception was to preclude testing the legality of a statute or regulation by a tort action." *Stewart v. United States,* 486 F.Supp. 178, 181 (C.D.Ill.1980).

■ The second component of plaintiff's complaint, pertaining to the manner in which the officers carried out the statutes and regulations with regard to post-seizure procedures, such as the allegedly improper reading of plaintiff's petition as a waiver of the right to a hearing, and the allegedly unfair delay in notifying him of the denial

of remission, purports to suggest a deprivation of procedural due process regardless of whether or not seizure was warranted. Even if this component of plaintiff's complaint could potentially sound in tort, and does not fall within the § 2680(a) "Exceptions" clause, in its present form it does not independently resemble a tort claim as between private parties. Plaintiff has not claimed, for example, emotional distress resulting from the alleged deprivation of due process. As such, the bare allegation of deprivation of due process does not *per se* give rise to tort liability. *See Carey v. Piphus*, 55 L.Ed.2d 252, 435 U.S. 247, 258, 262–64, 98 S.Ct. 1042, 1051–53 (1978).

▇ Finally, assuming *arguendo* that our analysis is incorrect and that the FTCA creates a federal cause of action and jurisdiction for a complaint such as this one, plaintiff's lawsuit is nevertheless time-barred under the FTCA. Congress waived sovereign immunity only as to those complaints filed "within six months ... of notice of final denial of the ·claim by the agency to which it was presented." 28 U.S.C. § 2401(b). Plaintiff here received a final denial of his petition by the agency in early January of 1982 and filed this lawsuit on September 30, 1982, more than eight-and-one-half months later. Because the statute of limitations has run, we lack jurisdiction under the FTCA. *See United States v. Kubrick*, 444 U.S. 111, 117–18, 100 S.Ct. 352, 356–57, 62 L.Ed.2d 259 (1979).

▇ Hence, we believe that plaintiff's claims for money damages are barred since we find no applicable statute by which the United States has waived sovereign immunity to a suit of this sort. We find, on the other hand, that plaintiff's equitable claims are cognizable under section 702 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 702.

Section 702 provides in relevant part, A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial relief thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States.

Plaintiff here claims to have suffered legal wrong because of agency action. The APA, unlike the Tucker Act, independently creates a cause of action for equitable relief, *see Block v. Community Nutrition Institute*, —— U.S. ——, 104 S.Ct. 2450, 2454, 81 L.Ed.2d 270 (1984); *Glacier Park Foundation v. Watt*, 663 F.2d 882, 884 (9th Cir.1981); *see also Chrysler Corp. v. Brown*, 441 U.S. 281, 316–17, 99 S.Ct. 1705, 1724–25, 60 L.Ed.2d 208 (1979) (availability of review under APA makes implied right of action under separate statute unnecessary), and waives sovereign immunity to such actions, *Sea-Land Service, Inc. v. Alaska Railroad*, 659 F.2d 243, 244 (D.C. Cir.1981), *cert. denied*, 455 U.S. 919, 102 S.Ct. 1274, 71 L.Ed.2d 459 (1982). Furthermore, suits under the APA may be brought, as this one is, directly against the United States without naming an agency or officer as a defendant. *See* 5 U.S.C. § 703 (suit may be brought against United States, agency, or officer). Therefore, we see no bar to our consideration of plaintiff's equitable claims under the APA.

*Merits*

Plaintiff's primary contention is that federal agents deprived him of property without due process of law by seizing his car without "reasonable cause" and not providing him with a hearing. The statutory scheme pursuant to which the D.E.A. officers seized plaintiff's car requires procurement of a warrant by the seizing officers except in cases where "the Attorney General has probable cause to believe that the property has been used or is intended to be used" to transport narcotics. 21 U.S.C.

§ 881(b)(4). In such cases, the statute permits summary seizure, but, where the seized goods are valued at less than $10,-000.00, the statute provides aggrieved individuals with two remedies in accordance with the customs laws, 19 U.S.C. §§ 1607–18, *see* 21 U.S.C. § 881(d). Within twenty days of notice of seizure, any person may file a claim and post a $250.00 bond to become entitled to participate in a judicial forfeiture proceeding. 19 U.S.C. §§ 1608, 1615; 21 C.F.R. §§ 1316.76, 1316.78. Additionally, within thirty days of notice of seizure, without posting bond, any person may file a petition for mitigation or remission of forfeiture, on which agency officials rather than a court rule without a hearing. 19 U.S.C. § 1618; 21 C.F.R. § 1316.79; 28 C.F.R. §§ 9.1–9.7.

These options were explained to plaintiff in the notice of seizure he received from D.E.A., as reprinted above. Plaintiff's method of responding, whether intentional or inadvertent, was to straddle the available courses of action. In form, plaintiff's response was a petition for remission, in that it was so titled, and was sent within the time for petitioning but after the time and without the requisite bond for filing a claim. In substance, however, plaintiff's "petition" more resembled a judicial claim in that it did not state grounds for remission or mitigation, but rather contested the basis for and constitutionality of the seizure. D.E.A. officers treated the response as a petition for remission. Hence, plaintiff was not accorded a hearing.

We believe that this course of events did not deprive plaintiff of due process of law. The fact that notice and the opportunity for a hearing were postponed until after seizure does not violate the due process clause in circumstances such as this where the government has an interest in asserting *in rem* jurisdiction over mobile property thought to have been used for illicit purposes. *See Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 676–680, 94 S.Ct. 2080, 2088–90, 40 L.Ed.2d 452 (1974). Plaintiff had the constitutional right after the seizure to be put on notice of his option to receive a hearing. Our reading of the letter sent by D.E.A. to plaintiff is that it so notified him. We believe that the language, "If you intend to place the matter in the United States District Court to contest the probable cause for this seizure, a claim and cost bond of $250.00 must be filed with this office on or before September 16, 1981" instructs in plain English that a hearing is available upon performance of certain acts. *Cf. United States v. One 1971 BMW 4-Door Sedan*, 652 F.2d 817, 822 (9th Cir.1981) (similar letter meets minimum due process requirement for notification of right to petition for remission); *compare Jaekel v. United States*, 304 F.Supp. 993, 998–99 (S.D.N.Y.1969) (oral notice of seizure with advice to contact an attorney but without notification of pendency of forfeiture proceedings denies due process). Moreover, the letter provided a name and number to call in case of questions. Plaintiff, assisted by an attorney, failed to follow the outlined procedures for obtaining a hearing. While those who received his "Petition" might have interpreted it as a claim, albeit untimely and without the required bond, it was not incumbent upon them to do so. Otherwise, every petition that hints at a challenge of the grounds for seizure would be susceptible to the later interpretation that it was intended as a claim and entitled the petitioner to a judicial hearing.

Having found that plaintiff received due process in terms of notice and opportunity to intervene in a forfeiture hearing, we still must consider plaintiff's contention that his petition for remission should have entitled him to a hearing. Plaintiff takes this position because he contends that the regulatory prohibition of hearings on such petitions in 28 C.F.R. § 9(c) derogates the customs laws statute providing that in appropriate circumstances the Secretary of the Treasury may

> remit or mitigate the [forfeiture] upon such terms and conditions as he deems reasonable and just.... In order to enable him to ascertain the facts, the Secretary of the Treasury may issue a commission to any customs officer to take testimony upon such petition....

19 U.S.C. § 1618. The government contends that this court cannot review the procedures attendant to agency review of the petition because they are a matter of administrative grace. While the APA may preclude us from reviewing the agency's decision on the merits of the petition if this "agency action is committed to agency discretion by law," 5 U.S.C. § 701; *see United States v. One 1973 Buick Riviera Automobile,* 560 F.2d 897, 900 (8th Cir.1977); *United States v. One 1958 Pontiac Coupe,* 298 F.2d 421, 423 (7th Cir.1962); we have the power under the APA to "hold unlawful and set aside agency action ... found to be ... short of statutory right..." 5 U.S.C. § 706(2). We can, therefore, determine whether 28 C.F.R. § 9(c) deprives plaintiff of a hearing to which its enabling statute entitles him.

We do not, however, believe that 28 C.F.R. § 9(c) derogates 19 U.S.C. § 1618. That latter provision allows the Secretary to take testimony at his discretion but creates no right in a petitioner to demand that the Secretary do so. Hence, the regulatory prohibition does not deprive plaintiff of a statutorily guaranteed right.

 Plaintiff further alleges deprivation of due process because of the almost four-month interval between his petitioning for remission and his receipt of notification of denial. Again, the government claims unreviewability because of the discretionary nature of the agency's treatment of petitions for remission. Here too, however, plaintiff does not ask us to reconsider the merits of his petition but rather to examine the constitutionality of the decision-making process, a task we are empowered to undertake. *See* 5 U.S.C. § 706. Having created regulations, even if gratuitous, the agency may be required to carry them out in constitutional fashion. *See Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 870, 74 L.Ed.2d 675 (1983). While we know of no ready formula for determining how much time is too much time under the due process clause for the agency to keep a petitioner waiting, we do not see the four-month period as so egregious as to amount to a constitutional violation. Courts have found no deprivation of due process where

intervals of this length or longer delay a seemingly more critical time period than this one; that is, the time between filing of claims and institution of forfeiture proceedings, *see, e.g., United States v. Eight Thousand Eight Hundred and Fifty Dollars,* 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983) (eighteen month delay); *United States v. Oil Screw Gulf Princess II,* 543 F.Supp. 1037, 1039–41 (S.D.Car. 1982) and cases cited therein.

 Finding no violation of due process, we turn to consider plaintiff's contention that the seizure violated his fourth amendment rights because the seizing officers lacked probable cause to believe that the car had been used to transport narcotics. We recognize our equitable power to order the government to return to the owner goods seized in violation of the fourth amendment, as plaintiff requests. *See Go-Bart Importing Company v. United States,* 282 U.S. 344, 355, 358, 51 S.Ct. 153, 157, 158, 75 L.Ed. 374 (1931). Yet if we examine the merits of plaintiff's fourth amendment claim we will in effect circumvent the legislative scheme for forfeiture proceedings at which claimants may, by asserting their claim and posting bond in timely fashion, intervene and challenge the grounds for seizure. We consider the possibility that plaintiff, by his failure to follow the administrative procedures for causing the government to institute a judicial hearing, either consented to the seizure or forfeited the right to contest probable cause.

To identify plaintiff's post-seizure fourth amendment rights we analogize to the more typical pre-search or -seizure rights. Ordinarily, of course, government officials bear the burden prior to search or seizure of appearing before a magistrate and demonstrating probable cause to obtain a warrant. An exception exists for searches and seizures conducted pursuant to consent, which extinguishes the warrant and probable cause requirements. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973). The apparent rationale for the consent excep-

tion is that the individual has agreed to the intrusion into his or her privacy and therefore judicial authorization is not needed to override privacy rights, *see Zap v. United States*, 328 U.S. 624, 628, 66 S.Ct. 1277, 1279, 90 L.Ed. 1477 (1946) (consent is voluntary waiver of claim to privacy).

Where searches and seizures must be conducted under exigent circumstances in summary fashion, procurement of a warrant is unnecessary but probable cause must exist, and can be challenged after the fact. *See Vale v. Louisiana*, 399 U.S. 30, 34, 90 S.Ct. 1969, 1971, 26 L.Ed.2d 409 (1970); *McDonald v. United States*, 335 U.S. 451, 456, 69 S.Ct. 191, 193, 93 L.Ed. 153 (1948). The rationale for applying the consent exception in the pre-search or -seizure context seemingly applies as well after the fact of a summary seizure, so that an individual who chooses not to contest the basis for an exigent search or seizure relieves the government of the need to show that "the exigencies of the situation made that course imperative," *McDonald v. United States*, 335 U.S. 451, 456, 69 S.Ct. 191, 193, 93 L.Ed. 153 (1948). When the search or seizure is an accomplished fact, however, proof of consent may be more difficult than where consent is the entryway of police to the item to be searched or seized.

■ Consent *ex ante*, and by extension *ex post*, does not require " 'an intentional relinquishment or abandonment of a known right or privilege,' " the standard often applied to ascertain waivers of constitutional rights. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 235–48, 93 S.Ct. 2041, 2051–59, 36 L.Ed.2d 854 (1973) (*quoting Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). Rather, consent is effective so long as voluntarily given. *Id.* at 248–49 (1973). In this case, the voluntariness of plaintiff's actions and omissions through his attorney, specifically, petitioning for remission and failing to file a claim and bond, is not an issue. Yet, these voluntary actions and omissions do not in our judgment constitute "consent" to the seizure, given that plaintiff's petition directly challenged the grounds for the seizure. Just as a pre-seizure statement to

police of "Yes, you may not seize my car" would not, without other evidence, constitute consent, plaintiff's omissions in combination with his actions here suggests at least as much a challenge to as an acquiescence in the seizure.

Nevertheless, we believe that despite lack of evidence of consent, plaintiff forfeited his right to contest probable cause. Courts have found in several contexts that fourth amendment rights can be forfeited. *See e.g.*, *Nardone v. United States*, 308 U.S. 338, 341–42, 60 S.Ct. 266, 267–68, 84 L.Ed. 307 (1939) (defendant must take timely steps to challenge legality of government's means of obtaining evidence, and judge should not consider such claims in midst of trial unless defendant lacked adequate knowledge to make claim at earlier stage); *United States v. Bullock*, 590 F.2d 117, 121 (5th Cir.1979) (defendant who failed to raise fourth amendment claim prior to or during trial cannot do so on appeal); *United States v. Napela*, 28 F.2d 898, 903 (N.D.N.Y.1928) ("[e]ven the constitutional right to move for a return of property illegally seized, and to object to evidence obtained and offered in violation of the Fourth and Fifth Amendments, may be impaired, if not lost, when not seasonably asserted"); *Providence Journal Co. v. Federal Bureau of Investigation*, 460 F.Supp. 762, 774–75 (D.R.I.1978), *rev'd on other grds*, 602 F.2d 1010 (1st Cir.1979), *cert. denied*, 444 U.S. 1071, 100 S.Ct. 1015, 62 L.Ed.2d 752 (1980) (party who failed to press fourth amendment claim at earlier opportunity cannot assert claim in subsequent proceeding); *cf. Weeks v. United States*, 232 U.S. 383, 393, 398, 34 S.Ct. 341, 344, 346, 58 L.Ed. 652 (1914) (lower court should have granted "timely" and "seasonable" application of accused for return of seized property). In this case, plaintiff failed to avail himself of the opportunity to make the government invoke a judicial hearing on probable cause. Months after the statutorily prescribed time for filing a claim expired, plaintiff filed this suit. This side-stepping of available procedures, cumbersome for the agency and this court, amounts in our view to a forfeiture of the

right to obtain a hearing. *Cf. Thompson v. Schwaebe*, 22 F.2d 518, 519–20 (9th Cir. 1927) (claimant who fails to file claim and post bond after summary seizure cannot, having bypassed adequate legal remedy, sue in equity for return of property).

We have in this opinion attempted to construe plaintiff's complaint and pleadings liberally, but we wish to emphasize that plaintiff did not by any fair reading of his complaint raise, and as a result we express no opinion on, a number of challenges related to those we have examined. For example, we do not consider whether or not the statutory scheme under which plaintiff's car was seized violates the fourth or fifth amendments by placing the burden of instituting proceedings on the plaintiff, *compare, e.g., United States v. Various Articles of Merchandise*, 750 F.2d 596, 598 (7th Cir.1984) (consolidated cases); *Jones v. City of Atlanta*, 647 F.2d 580, 585 (5th Cir.1981) (discussing statutes which place burden on government to institute post-seizure proceedings and do not allow forfeiture by default); whether or not the bond requirement creates an unconstitutional condition; or whether or not the burden of proof at forfeiture proceedings violates the fifth amendment, *see* Note, *Due Process Implications of Shifting the Burden of Proof in Forfeiture Proceedings Arising out of Illegal Drug Transactions*, 1984 Duke L.J. 822.

*Conclusion*

For all of the foregoing reasons, we find that plaintiff has not alleged any cognizable violations of his constitutional rights and accordingly we grant the government's motion for summary judgment.