Jay L. CAPLAN and Eva M. Caplan, Plaintiffs–Appellees,

v.

UNITED STATES of America, Defendant–Appellant.

No. 88–5558.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 21, 1989.

Decided June 30, 1989.

David Y. Olinger, Jr., Asst. U.S. Atty., Louis DeFalaise, U.S. Atty., Lexington, Ky., Michael Jay Singer, Dept. of Justice, Civ. Div., Appellate Staff, William Cole (argued), Dept. of Justice, Appellate Section, Civ. Div., Washington, D.C., for defendant-appellant.

William A. Dykeman (argued), Winchester, Ky., for plaintiffs-appellees.

Before MARTIN and RYAN, Circuit Judges, and SMITH, District Judge.*

* The Honorable George C. Smith, United States District Judge for the Southern District of Ohio, sitting by designation.

RYAN, Circuit Judge.

The United States appeals the district court's judgment for plaintiffs entered after trial without a jury in this negligence action brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.* The action arose from injuries suffered by plaintiff Jay L. Caplan when he was struck by a falling tree as he worked as a tree cutter in a government-owned forest. We affirm the district court's judgment for plaintiffs.

In approximately 1975, the U.S. Forest Service decided to institute a mass tree-killing program in several areas of the Daniel Boone National Forest, a federally-owned forest in Kentucky. The goal of the program was to clear out low quality trees to enable reforestation with higher quality trees. The Forest Service instituted the program in 1975 by injecting herbicide into most trees in designated areas of the forest.

In 1982, the Forest Service solicited bids for the cutting down of trees that had survived the 1975 mass herbicide treatment. Plaintiff Jay Caplan was a successful bidder, and in December 1982 he began cutting down live trees in several areas of the forest. Forest Service personnel informed Caplan of the mass herbicide treatment, but not the date of the treatment. Caplan could distinguish dead trees still standing from live trees that he was to cut down: dead trees or "snags" looked like poles with few or no limbs.

On April 11, 1983, just as Caplan finished cutting down a live tree in a tract in the forest known as the "Mill Branch area," a 30-foot long dead tree fell and struck him. The falling tree fractured Caplan's vertebrae, and as a result he is a paraplegic. The district court found, and the government does not contest, that the dead tree's fall was caused by a failure of the tree's support system and the ground shock resulting from the fall of the live tree that Caplan had just cut down. The court found that the instability of the dead tree, which had been injected with herbicide in 1975 as part of the government's mass herbicide program, resulted from root sys-

tem decay that had advanced to such an extent that the tree was barely anchored in the ground: "[I]t was as if a telephone pole was supported by being stuck into six (6) inches of sand." The court further found that the steep slope on which the tree was located and the gravelly, moist soil in which the tree stood enhanced its instability.

Plaintiffs brought this negligence action in April 1985 under the Federal Tort Claims Act, seeking damages of approximately $3.5 million. In October 1987, the case was tried without a jury, and in a memorandum opinion dated November 1987, the district court held that the government was negligent in failing to warn Caplan of an unreasonably dangerous condition in the Mill Branch area created by a large number of unstable dead trees. The court held that this negligent failure to warn was a proximate cause of Caplan's injuries, and in a separate decision on damages the district court awarded Caplan $2,155,865.52 and his wife $250,000 for loss of consortium. The district court denied defendant's motion under Fed.R.Civ.P. 59 for a new trial or to alter or amend judgment, and this appeal followed.

I.

The government argues that whether or not it was negligent in failing to warn Caplan of a dangerous condition in the Mill Branch area, it is immune from liability for Caplan's injuries under the "discretionary function exception" to the Federal Tort Claims Act. The district court rejected this argument in its memorandum and order denying the government's motion for new trial.

Under the Federal Tort Claims Act, the government's sovereign immunity is preserved for

[a]ny claim based upon ... the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). If a case falls within the discretionary function exception to the

Federal Tort Claims Act, this court is without subject matter jurisdiction. *Feyers v. United States*, 749 F.2d 1222, 1225 (6th Cir.1984), *cert. denied*, 471 U.S. 1125, 105 S.Ct. 2655, 86 L.Ed.2d 272 (1985).

Although the boundaries of the discretionary function exception are not altogether clear, the Supreme Court has emphasized that the purpose of the exception is to protect governmental conduct involving *the exercise of policy judgment:*

> The basis for the discretionary function exception was Congress' desire to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." The exception, properly construed, therefore protects only governmental actions and decisions based on considerations of public policy. In sum, the discretionary function exception insulates the Government from liability if the action challenged in the case involves the permissible exercise of policy judgment.

*Berkovitz v. United States*, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531, 541 (1988) (quoting *United States v. Varig Airlines*, 467 U.S. 797, 814, 104 S.Ct. 2755, 2765, 81 L.Ed.2d 660 (1984)).

In the present case, the government's failure to warn Caplan of a dangerous condition in the Mill Branch area was *not* conduct involving the exercise of policy judgment. Rather, the relevant policy decision in this case was the government's decision to deforest parts of the Daniel Boone National Forest in preparation for reforestation. This case is therefore governed by a line of cases holding that once the government makes a policy decision protected by the discretionary function exception, it must proceed with due care in the implementation of that decision. For example, in *Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955), the Supreme Court held the government liable for the negligent operation of a lighthouse:

> The Coast Guard need not undertake the lighthouse service. But once it exercised its discretion to operate a light on

Chandeleur Island and engendered reliance on the guidance afforded by the light, it was obligated to use due care to make certain that the light was kept in working order ... and to repair the light or give warning that it was not functioning.

350 U.S. at 69, 76 S.Ct. at 126–27.

Similarly, in *Reminga v. United States*, 631 F.2d 449 (6th Cir.1980), this court held that the discretionary function exception did not apply to the government's negligent preparation of a navigational chart.

> The import of our holding in *Reminga* is that once having exercised the discretion to issue navigational charts, the government is accountable for its negligence in failing to locate hazards accurately on the charts it publishes. Erroneously locating navigational hazards on its charts, like running a red light with a motor vehicle and causing an accident, involves no discretionary function or duty. Having undertaken, in its discretion, to issue charts locating navigational hazards at all, the FAA was liable for doing so carelessly.

*Myslakowski v. United States*, 806 F.2d 94, 98 (6th Cir.1986), *cert. denied*, 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 793 (1987); *see also Butler v. United States*, 726 F.2d 1057, 1063 (5th Cir.1984). Thus in this case, having exercised the discretion to deforest the Daniel Boone National Forest, the government is accountable for its negligence in the implementation of this decision.

The government's reliance on *Myslakowski* as support for its argument that the discretionary function exception should apply in this case is misplaced. In *Myslakowski*, plaintiffs sued the government for failure to warn of the rollover propensity of jeeps sold by the government pursuant to an "as-is-where-is" policy promulgated by the Post Office Department. This court held that the failure to provide warnings was within the discretionary function exception because the failure to warn was *required* by the government's "as-is-where-is" sales policy.

[O]mitting to require that any warnings be given concerning the performance of jeep vehicles ... was an inherent part of the discretionary decision to sell the vehicles "as-is-where is."

*Myslakowski*, 806 F.2d at 99. In the present case, however, the discretionary policy decision to deforest parts of the Daniel Boone National Forest did not require, either directly or implicitly, omission of warnings. Therefore, the failure to warn in this case, unlike that in *Myslakowski*, should not be protected as part and parcel of the discretionary policy decision.

We hold that the discretionary function exception to the Federal Tort Claims Act does not immunize the government from liability for Caplan's injuries.

## II.

■ The government challenges the district court's holding that it was under a duty to warn Caplan of the dangerous condition in the Mill Branch area created by the large number of unstable dead trees. Under Kentucky law, it is well established that a landowner owes invitees

"a duty to use ordinary care to have his premises in a reasonably safe condition for use in a manner consistent with the purpose of invitation, or at least not to lead them into a dangerous trap or to expose them to an unreasonable risk, but to give them adequate and timely notice and warning of latent or concealed perils which are known to him but not to them."

*Standard Oil Co. v. Manis*, 433 S.W.2d 856, 857 (Ky.1968) (citation omitted). The government argues that, under Kentucky's "obvious natural hazard" exception to the landowner duty to warn, it had no duty to warn Caplan in this case.

Under the "obvious natural hazard" exception, Kentucky courts have absolved landowners of liability for failure to warn invitees of the dangers of icy walkways.

"In cases where there is no act on the part of the landlord creating a greater danger than was brought about by natural causes, the dangers that are created by the elements, such as forming of ice and the falling of snow, are universally known and unless the landlord has contracted to provide against these dangers, all persons on his property must assume the burden of protecting themselves therefrom."

*Standard Oil Co.*, 433 S.W.2d at 858 (citation omitted). The rationale underlying this exception to the landowner's duty to warn of hazards on the land is that

natural outdoor hazards which are as obvious to an invitee as to the owner of the premises do not constitute an unreasonable risk to the former which the landlord has a duty to remove or warn against.

*Corbin Motor Lodge v. Combs*, 740 S.W.2d 944, 945 (Ky.1987).

We do not agree with the government's contention that the "obvious natural hazard" exception is applicable to this case. Unlike the risk created by ice on a walkway, the risk in this case—the hazard created by the large number of unstable dead trees—was *not* as obvious to the invitee as to the landowner. Although Caplan could observe many standing dead trees or "snags" in the Mill Branch area, he could not observe the extent of the root system decay in these trees. The district court found that this decay may advance to such an extent six or seven years after trees die that the trees may fall of their own weight or as the result of a very slight disturbance. Therefore, Caplan, who did not know that the government's mass tree-killing process had been carried out some eight years earlier, and therefore could not have known how long the root systems of the dead trees had been decaying, was not cognizant of the dangerous condition created by the large number of unstable dead trees in the Mill Branch area. The government, on the other hand, was aware of the period that had elapsed since it had injected the trees with herbicide and it knew, or should have known, of the likely substantial root system decay and resultant instability of a large number of the trees. Because of its superior knowledge, the government was under a duty to warn Ca-

plan of this dangerous condition in the Mill Branch area.[1]

### III.

■ The government also argues that the district court erred in holding that the government was negligent in not informing Caplan of the date on which trees in the Mill Branch area were treated with herbicide. We note initially that the government takes an unduly narrow view of the district court's holding. In its negligence holding, the district court did emphasize the importance of knowledge of the date of the herbicide injections—because root system decay and tree instability increase with time passage after injection. However, the court's negligence holding was not based solely on the mere failure to advise Caplan of the injection date; the court held that the government was negligent in failing to warn Caplan of the dangerous condition in the forest that had resulted from the substantial passage of time after the injections.

This court's standard of review of a district court's negligence determination is a narrow one.

> "[A] finding of negligence or the absence thereof will not be set aside unless the District Court's determination is 'clearly erroneous,' under [Fed.R.Civ.P.] 52."

> "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as trier of trier of fact, it would have weighed the evidence differently." However, when the "reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed," the findings of the district court will be overturned.

*Keir v. United States,* 853 F.2d 398, 412 (6th Cir.1988) (citations omitted).

We hold that the district court's holding that the government was negligent in failing to warn Caplan of the dangerous condition created by the substantial number of unstable dead trees in the Mill Branch area is not clearly erroneous. By merely informing Caplan that the herbicide injections had occurred, the government did not satisfy its duty to warn Caplan of the dangerous condition. Root system decay is a function of time; thus, knowledge that the injections had occurred was virtually meaningless without knowledge of *when* they had occurred and of the likely root system decay and tree instability attendant with the passage of time following the injections.

The district court's judgment for plaintiffs is AFFIRMED.

BOYCE F. MARTIN, Jr., Circuit Judge, concurring.

The majority has, I think, reached a fair conclusion in finding that the United States Forestry Service was negligent in not providing Jay Caplan with information regarding the still standing dead trees. Based upon the analysis used, however, I cannot see how this result squares with *Myslakowski v. United States,* 806 F.2d 94 (6th Cir.1986), *cert. denied,* 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 793 (1987). Knowledge of a dangerous condition is the crucial issue in each case. I add the following to help clarify what I take to be an ambiguous and quite often confusing area in the law.

Under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671 *et seq.,* Congress granted a general waiver of sovereign immunity by authorizing suits against the United States for damages

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the

---

1. Because the government had superior knowledge of the dangerous condition, we also reject the government's argument that Caplan's status as an independent contractor absolved the government of a duty to warn. Under Kentucky law, "if the defect or danger is hidden and

known to the owner, and neither known to the contractor, nor such as he ought to know, it is the duty of the owner to warn the contractor." *Simmons v. Clark Construction Co.,* 426 S.W.2d 930, 934 (Ky.1968).

United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). Congress preserved the government's sovereign immunity for

[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). The majority correctly notes that while "the boundaries of the discretionary function exception are not altogether clear, the Supreme Court has emphasized that the purpose of the exception is to protect governmental conduct involving *the exercise of policy judgment* ..." (emphasis in original), citing *Berkovitz v. United States,* 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988) and *United States v. Varig Airlines,* 467 U.S. 797, 814, 104 S.Ct. 2755, 2765, 81 L.Ed.2d 660 (1984).

The majority asserts that the present case is "governed by a line of cases that hold that once the government makes a policy decision protected by the discretionary function exception, it must proceed with due care in the implementation of that decision." As an example of this line of cases, the majority cites *Indian Towing v. United States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955). In that case, the Supreme Court held that the Coast Guard's decision to operate a lighthouse was discretionary, but that once it "exercised its discretion to operate a light ... and engendered reliance on the guidance afforded by that light, it was obligated to use due care to make certain that the light was kept in good working order...." *Id.* at 69, 76 S.Ct. at 126–27. This Court applied a similar analysis in *Reminga v. United States,* 631 F.2d 449 (6th Cir.1980), when it held that the Federal Aviation Administration's negligent preparation of a navigation chart was not a discretionary function. "Though not required by the law to do so, when the FAA arranges for the publication of aeronautical navigation charts and engenders reliance on them, it is required to use due care to see that they accurately depict what they purport to show." *Id.* at 452 (footnote omitted).

As these cases suggest, it is helpful to view governmental conduct as a two step process: first as a discretionary decision and second as the implementation of that decision requiring due care. One court has found this distinction originating in *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). *See Alabama Electric Co-op, Inc. v. United States,* 769 F.2d 1523, 1526–28 (11th Cir.1985) (referring to this distinction as the "planning/operational distinction"). The majority correctly applies this distinction to the facts of the present case. It correctly finds the Forest Service's decision to clear and reforest certain areas of Daniel Boone National Forest was a decision that involved the exercise of policy judgment. This decision falls within the discretionary function exception. The majority also correctly concludes that the government's failure to warn Jay Caplan of the dangerous condition present was not a decision involving the exercise of policy judgment and therefore was not a discretionary function.

My difficulty with the majority's opinion is its failed attempt to make this opinion consistent with this Court's opinion in *Myslakowski v. United States,* 806 F.2d 94 (6th Cir.1986), *cert. denied,* 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 793 (1987). In *Myslakowski,* the Postal Service sold a number of its surplus jeeps to the public. These vehicles had a propensity to rollover, causing injury to the occupants. The government was aware of this defect when it sold the jeeps. *Id.* at 95. The Postal Service, however, instructed its district managers to sell the jeeps "as-is-where-is." *Id.* at 96. In the Court's words, that instruction "included, inferentially no test driving, no mechanical inspection, no refurbishing or reconditioning, no express warranties, and certainly no warnings." *Id.* at 98. The Court concluded that the Postal Service's decision to sell the jeeps in this manner, "omitting to require that any warnings be given concerning the performance of jeep vehicles, whether purposeful or negligent, was an inherent part of the discretionary

decision to sell the vehicles 'as-is-where-is.' It gives rise to no liability." *Id.* at 99. Contrary to *Indian Towing* and *Reminga,* the Court did not view the governmental conduct in *Myslakowski* as a two step process composed of a discretionary decision to act and implementation of that decision requiring due care. Instead, the Court collapsed these two steps into one discretionary act. This move cannot be squared with the analysis of governmental conduct in the present case.[1]

The source of my disagreement with the majority's application of *Myslakowski* is, I suspect, due to the fact that the line between a discretionary decision and its implementation is not so clear cut. The demarcation between planning and operation is often ambiguous. At some point, it seems, reasonable persons can disagree as to the characterization of a governmental act as a discretionary policy decision protected by the Federal Tort Claims Act or as the mere execution of that decision to which the standard of due care applies.

This ambiguity and the consequent disagreement is particularly acute in those instances where the government specifies certain procedures or methods for implementing its policy decision. Some courts view this act as "an inherent part of the discretionary decision," *Myslakowski* at 99, while others see it as a separate act to which the standard of due care applies so that "the government [is] treated, as Congress intended as any private entity." *Barlieb v. Turner & Newall, Ltd.,* 588 F.Supp. 473, 475 (E.D.Pa.1980).[2]

The Supreme Court has avoided resolving this ambiguity in terms of specifying the level of governmental activity to which the discretionary function no longer applies. In *Dalehite v. United States,* 346 U.S. 15, 35, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), the Court stated that "[i]t is unnecessary to define, apart from this case, precisely where discretion ends." Similarly, in *United States v. Varig Airlines,* 467 U.S. 797, 813, 104 S.Ct. 2755, 2764, 81 L.Ed.2d 660 (1984), the Court found that it was "unnecessary—and indeed impossible—to define with precision every contour of the discretionary function exception."

Perhaps, though, the search for some line of demarcation between discretionary decision and non-discretionary implementation is the wrong question and courts should attempt to reformulate the inquiry. The Supreme Court took the first step in this regard in *United States v. Varig Airlines* 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). In that case, the Court stated that "it is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case." *Id.* at 813, 104 S.Ct. at 2764. The "basic inquiry" in this regard "is whether the challenged acts ... are of the nature and quality that Congress intended to shield from tort liability." *Id.* Regarding Congress intent, the Court stated that "whatever else the discretionary function exemption may include, it plainly was intended to encompass the discretionary acts of the government acting in its role as a regulator of the conduct of private individuals." *Id.* at 813–14, 104 S.Ct. at 2764 (footnote omitted). In doing this "Congress wished to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic and political policy through the medium of an action in tort." *Id.* at 814, 104 S.Ct. at 2765. This was "an exception for discretionary governmental functions...." *Id.* In *Varig Airlines,* the Court went on to find that the Federal Aviation Administration's choice of a "spotcheck" program

---

1. The decision in *Myslakowski* is in accord with the Postal Service jeep litigation decisions of several other federal courts. *See, e.g., Ford v. American Motors Corp.,* 770 F.2d 465 (5th Cir.), *reh'g denied,* 776 F.2d 1048 (5th Cir.1985); *Shirey v. United States,* 582 F.Supp. 1251 (D.S.C. 1984); *Louviere v. AM General Corp.,* 620 F.Supp. 6 (W.D.La.1985).

2. In *Barlieb* the court found that the government's allegedly negligent sale of asbestos without warning of the harmful effects of exposure did not fall within the discretionary function exception, *but see Stewart v. United States,* 486 F.Supp. 178 (C.D.Ill.1980) and *Smith v. Johns-Manville Corp.,* 795 F.2d 301 (3rd Cir.1986), where the court in each case found that the decision to sell asbestos without warning was a discretionary function.

to monitor aircraft manufacturer compliance with FAA regulations was a discretionary act.

*Varig Airlines* suggests that the general question "Did the government exercise discretion in this case?" is not adequate to address the many ambiguities present in Federal Tort Claims Act cases. It is only a threshold question. If the answer to it is "yes," a court may then ask whether, in reviewing governmental conduct in a tort suit, it will be required to "second-guess" the government's decisions based on "social, economic, and political policy" in a tort action. That is, given that some discretion is present in a governmental act, what kind of judgment is being exercised behind this discretion. If the judgment exercised is of a policy nature, involving social, economic and political factors, then the discretionary function exception applies.

An example of this inquiry can be seen in *Alabama Electric Co-op, Inc. v. United States*, 769 F.2d 1523 (11th Cir.1985). In that case, the Army Corps of Engineers was accused of causing erosion beneath an electrical transmission line tower located on the bank of the Alabama River through construction of a dike upstream. The power company which owned the tower was forced to stabilize it at a substantial cost. The district court dismissed the power company's suit against the Corps under the discretionary function exception. The Eleventh Circuit reversed, following *Varig Airlines*. The court held that "where the Corps makes a social, economic or political policy decision concerning the design of a particular project, that decision is excepted from judicial review under § 2680(a). In the absence of such a policy decision, the Corps' design decisions are subject to judi-

cial review...." *Id.* at 1536–37. The court found no policy decisions made by the Corps concerning the dike, but remanded the case to the district court for expansion of the record. *Id.* at 1537.[3]

The court's approach in *Alabama Electric* could adequately address the problem presented by Caplan's case. Because no policy judgment was exercised in the decision not to warn Jay Caplan of the dangerous condition of the forest, the discretionary function exception does not apply. This approach remains troubling, however, because it leaves open the possibility that the government could intentionally engage in negligent conduct causing injury to individuals and yet remain immune from suit. For example, under this approach the Coast Guard could have intentionally operated the lighthouse in *Indian Towing* in a hazardous fashion if it had considered this type of operation to be cost-effective. Similarly, the FAA could have intentionally made faulty navigational charts, or the Postal Service could decide to sell, without warning, surplus vehicles known to be defective if these actions involved government cost calculations. *See Myslakowski*, 806 F.2d at 99 (government decision to sell jeeps without warning of defect "whether purposeful or negligent was an inherent part of the discretionary decision ...").

Fortunately, the Court in *Varig Airlines* suggested another factor to examine. It suggested that courts look to see whether the government is acting in its role as regulator, or in some other role. In those cases where the government is not fulfilling a governmental function, where the government is not acting as "a regulator of private individuals," *Varig Airlines*, 467

---

**3.** In its well-reasoned opinion, the court cited cases in which discretionary acts by government officials were actionable because they involved the exercise of professional judgment rather than the formulation of government policy. *See, e.g., Griffin v. United States*, 500 F.2d 1059 (3rd Cir.1974) (professional, scientific judgment exercised in approving live polio virus vaccine held actionable); *Hendry v. United States*, 418 F.2d 774 (2d Cir.1969) (medical judgment of government psychiatrist and psychologist in diagnosis of patient held actionable). The court also cited numerous cases in which design deci-

sions were actionable under the Federal Tort Claims Act and those which were not. *Cf. Seaboard Coast Line Railroad Co. v. United States*, 473 F.2d 714 (5th Cir.1973) (government's negligent design of drainage system diverting water to railway's right-of-way was actionable) *with Payne v. United States*, 730 F.2d 1434 (11th Cir. 1984) (dredging and widening of river by Corps of Engineers caused erosion and collapse of plaintiff's house not actionable because Corps decided cost of erosion studies exceeded cost of after-the-fact property acquisition).

U.S. at 813–14, 104 S.Ct. at 2764; but as a private individual itself, courts should be less inclined to apply the discretionary function exception.[4] The district court in *Barlieb v. Turner & Newall, Ltd.*, 588 F.Supp. 473 (E.D.Pa.1980), took just such an approach. In *Barlieb*, the court refused to dismiss a case against the United States in which the government was accused of negligence in the sale of asbestos. In reaching this conclusion, the court considered whether the government's "decision to sell the asbestos *without warning* was a 'discretionary function.'" *Id.* at 477 (emphasis in original). Although this case was decided before *Varig Airlines*, the court noted "that the decision to sell the asbestos in unmarked crates to knowledgeable buyers involved 'a weighing of economic and other policy factors.'" 588 F.Supp. at 477 quoting *Stewart v. United States*, 486 F.Supp. 178, 184 (C.D.Ill.1980). The court found that "[c]ertainly the costs factors were present, but they were precisely the cost factors involved in any sale: repackaging, transportation, and so forth." 588 F.Supp. at 477. It found that "the weighing of 'policy' consideration ... in the context of governmental function ended when the decision to sell was made in a manner that would not disturb the usual markets for asbestos. Any subsequent activity on the part of the government created exactly the kind of 'like circumstances' anticipated by the Federal Tort Claims Act, and the government should be treated, as Congress intended, as any private entity." *Id.*

This approach can explain why *Myslakowski* was not properly decided. In that case the government acted "as any private entity," *Barlieb* at 477, in selling certain motor vehicles. As such, the government was obliged to sell its vehicles with due care as provided by state law. It could not exempt itself from potential liability by providing, through the exercise of its discretion, the manner in which vehicle sales were to take place. Although cost factors may have been involved in the sale of these vehicles "they were precisely the cost factors involved in any sale" *id*, by any private party. Congress did not intend to grant the government freedom from liability under these circumstances.

While the alternative lines of inquiry suggested by *Varig Airlines* are admittedly not applicable to all Federal Tort Claims Act cases, they may help resolve those cases where the discretionary nature of a governmental act is uncertain. The first factor suggested will ensure that only those discretionary decisions involving policy judgment will be exempted. The second factor suggested will ensure that the government is held to the same standard of care as private parties in those instances where it acts as a private party even though some "policy" decision may be involved. This is desirable because it is what I think Congress intended.

---

**4.** Note that this is the reverse of what the government argued in *Indian Towing v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955). In that case the government argued that the discretionary function exception necessarily applies to "uniquely governmental functions."

*Id.* at 64, 76 S.Ct. at 124. The Court rejected this argument, in part, in order to avoid "the 'nongovernmental'-'governmental' quagmire." *Id.* at 65, 76 S.Ct. at 124. I think that criticism of this approach remains valid.