Reba J. RICHARDSON, Administratrix
of the Estate of Ronnie Richardson,
Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. No. 89–4064.

United States District Court,
W.D. Arkansas,
Texarkana Division.

Oct. 17, 1991.

David Hodges, Little Rock, Ark., Thomas A Martin, Jasper, Ark., Jay Youngdahl, Little Rock, Ark., for plaintiff.

Heidi E. Weckwert, U.S. Dept. of Justice, Washington, D.C., Claude S. Hawkins, Jr., Asst. U.S. Atty., Fort Smith, Ark., for defendant.

## MEMORANDUM OPINION

MORRIS SHEPPARD ARNOLD, District Judge.

This lawsuit arises out of a fatal accident allegedly caused by the defendant's negligent oversight of a contractor's tree removal operations in the Ozark–St. Francis National Forest.[1] Ronnie Richardson was crushed and killed on September 24, 1986, by a beech tree he was attempting to cut down. Mr. Richardson was employed by Eddy Heydenreich, with whom the Forest Service had contracted to cut timber. The logging operations took place on steep terrain and the Forest Service designated which trees were to be cut down. Mr. Richardson's widow, Reba Richardson, filed this negligence action against the United States. Defendant filed this motion for summary judgment on March 11, 1991. Since that time the court has granted plaintiff leave to amend her complaint; thus it will consider the motion as it applies to the amended complaint.

### I.

Relying on the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), §§ 2671–2680, plaintiff makes myriad negligence claims against the government. For purposes of analysis, they may be grouped into four categories.

First, the plaintiff asserts that the government awarded the contract to Heydenreich without ascertaining that he was competent to perform the work in a safe manner. Second, plaintiff claims that the government was negligent in the terms

---

1. This complaint was originally filed in May of 1989. The court dismissed the case in October of 1989. On appeal the Eighth Circuit specifically declined to comment on the court's discretionary function holding, but remanded the case on the ground that this court erred in granting summary judgment without giving plaintiff an opportunity to supplement her response after the court converted the defendant's motion to dismiss into a motion for summary judgment. *See Layton v. United States,* 919 F.2d 1333 (8th Cir.1990).

that it included in the contract in that it failed to specify that liability or workmen's compensation insurance be provided to the contractor's employees. Third, plaintiff maintains that the government failed to enforce the contract properly. Specifically, plaintiff alleges that the government negligently enforced the safety regulations in the contract, failed to supervise the contractor adequately, negligently selected the trees in question, and negligently selected the removal method. Finally, the amended complaint also alleges that the Forest Service had a duty (1) to prevent the contractor from conducting inherently dangerous or ultrahazardous activities without proper precautions and (2) to warn the employees of any unusually hazardous conditions.

The government argues, first, that plaintiff's claims are jurisdictionally barred by the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a), because plaintiff challenges the Forest Service's purely discretionary judgments, and, second, that the government has not breached any actionable duty under Arkansas law. For the reasons stated below, the government's motion for summary judgment will be granted as to the entirety of plaintiff's complaint based on the discretionary function exception. The court need not address the question of duty under Arkansas law.

## II.

In ruling on a motion for summary judgment, it is the court's obligation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. 10 C. Wright, A. Miller, and M. Kane, *Federal Practice and Procedure: Civil* 2d § 2716 at 643 (1983). If there is no genuine issue regarding the material facts, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. *Id.* § 2712 at 564–67. Summary judgment is not a "procedural shortcut," but "an integral part" of the federal

rules as a whole. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

The moving party bears the initial burden of demonstrating, by reference to the pleadings, affidavits, and discovery materials, the absence of genuine issues of material fact. The nonmoving party is then required to go beyond the pleadings and designate specific facts showing that a genuine issue exists for trial. *Id.* at 324, 106 S.Ct. at 2553. A party opposing a properly supported motion for summary judgment cannot simply rest on allegations and denials in order to get to a jury. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 256–57, 106 S.Ct. at 2514. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## III.

The liability of the United States under the FTCA is subject to numerous exceptions, including the discretionary function exception. That exception precludes the imposition of liability against the United States for conduct

based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).[2] In particular, the exception bars suits against the government based on acts involving judgments or choices of its agents, but allows suits alleging violations of mandatory directives. *United States v. Gaubert,* —— U.S. ——, 111 S.Ct. 1267, 1273, 113 L.Ed.2d 335 (1991).

**2.** Finding that the exception exists actually divests the district court of jurisdiction to hear the case because the government must consent to

suit, and under the exception, consent does not obtain.

"The requirement of judgment or choice is not satisfied if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because the 'employee has no rightful option but to adhere to the directive.'" *Id.* Under this exception, then,

> if a regulation mandates particular conduct, and the employee obeys the direction, the Government will be protected because the action will be deemed in furtherance of the policies which led to the promulgation of the regulation. If the employee violates the mandatory regulation, there will be no shelter from liability because there is no room for choice and the action will be contrary to policy. On the other hand, if a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations.

*Id.* 111 S.Ct. at 1274. Before the exception applies, therefore, an element of discretion must exist.

■ In addition, a defendant claiming the exemption must show that the disputed act was in pursuit of agency objectives. "For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." *Id.* at 1775.[3] The "purpose of the exception is to 'prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy.'" *Id.* at 1273. The focus should be "on the nature of the actions taken and on whether they are susceptible to policy analysis."[4] *Id.* at 1275.

Accordingly, the court will inquire, for each Forest Service act complained of, first, whether the challenged actions were discretionary or whether they were controlled by a mandatory rule, and, second, whether the actions were in furtherance of a Forest Service policy.

## IV.

### A.

■ Plaintiff's claim alleging negligent selection of the contractor is easily disposed of. In *McMichael v. United States*, 751 F.2d 303, 307 (8th Cir.1985), the Eighth Circuit held that "[d]eciding to award a government ... contract to a particular manufacturer involves weighing various facts and policies and thus is discretionary in nature." Here, it was also an act taken in pursuit of the policy objective of thinning trees on government land. *See also Jones v. United States*, 698 F.Supp. 826, 833 (D.Haw.1988) (Air Force decision to award pest control contract "clearly involved policy judgments" of the kind protected by the discretionary judgment exception). Accordingly, plaintiff's claim alleging negligent selection of the contractor will be dismissed.

### B.

■ Plaintiff's allegation that defendant negligently failed to provide workmen's compensation, or require the contractor to do so, must also fail. Failure to provide for a particular clause in a government contract cannot be a basis for suit under the FTCA unless the particular clause was mandatory. *See Dalehite v. United States*, 346 U.S. 15, 39–42, 73 S.Ct.

---

**3.** The Court suggested that negligence in driving a car on official business would not be shielded from liability because driving the car would not be in furtherance of the regulatory purpose. *United States v. Gaubert*, —— U.S. ——, 111 S.Ct. 1267, 1275 n. 7, 113 L.Ed.2d 335 (1991).

**4.** Plaintiff argues that the government's negligent decisions in this case were made at the "operational level," not the "policy or planning level," and that as a result the government is liable for Mr. Richardson's death. Plaintiff's argument is contrary to law, however, for the discretionary exception applies to the "operational level" as well as the "policy level." The Supreme Court held in *Gaubert* that discretionary decisions made at the operational level, *e.g.*, the day-to-day management of a bank, could also be policy-based and clearly came within the purview of the discretionary exception. *Gaubert*, 111 S.Ct. at 1275.

956, 969–72, 97 L.Ed. 1427 (1953). A contract specification is generally "a discretionary function" of the government "in the absence of unusual conditions." *Irzyk v. United States*, 412 F.2d 749, 751 (10th Cir.1969) (*per curiam*). "This kind of decision is not one which the courts, under the [FTCA], are empowered to cite as 'negligence.'" *Dalehite*, 346 U.S. at 41, 73 S.Ct. at 970.

Here, the contract clearly provided that the contractor "shall, without additional expense to the government, be responsible for ... complying with any Federal, State, and municipal laws, codes, and regulations applicable to performance of the work." In effect, the Forest Service delegated any mandatory insurance requirements to the contractor. If the contractor failed to provide under the contract the workmen's compensation required by state law, then the contractor broke his contract with the government. This fact, however, is not relevant to whether the Forest Service had discretion to delegate this requirement. Plaintiff has provided no authority, moreover, for the proposition that the federal government as a landowner must provide such insurance or require the contractor to do so. Providing insurance was therefore a discretionary matter that was properly delegated to the contractor.[5] Such a decision was properly a policy judgment because, according to the affidavits submitted by Forest Service personnel, when the Forest Service writes contract specifications, "it considers ... budgetary and staffing considerations, with the purpose of accomplishing the mission of the agency."

### C.

#### 1. Safe Workplace

■ Plaintiff alleges that the defendant negligently exercised its authority to require contract compliance with safety regulations and to supervise the contractor's work, and failed to warn contractor's employees that they were using unsafe tree-felling methods. Plaintiff also argues that

defendant was negligent in requiring logging in a dangerous area.

■ The defendant delegated to the contractor the obligation to provide a safe workplace. Such a delegation is an exercise of discretion for it is not required by any rule. In particular, delegation of safety to the contractor is a proper exercise of agency discretion and valid for purposes of the discretionary function exception. *See Feyers v. United States*, 749 F.2d 1222, 1227 (6th Cir.1984), *cert. denied*, 471 U.S. 1125, 105 S.Ct. 2655, 86 L.Ed.2d 272 (1985) ("United States' decision[ ] to delegate safety responsibility to [the contractor was] clearly the type of discretionary function[ ] protected by 28 U.S.C. § 2680(a)"); *Markes v. United States*, 704 F.Supp. 337, 339 (N.D.N.Y.1988) ("it is clear that the government's delegation of primary responsibility for safety to [the contractor] involved the performance of a discretionary function for which the United States cannot incur liability"). The delegation of safety compliance was not prohibited by regulation and therefore cannot be a basis for liability. In addition, the decision to delegate safety to the contractor was policy-based because when the Forest Service contracts for tree-cutting services, according to affidavits submitted by Forest Service personnel, it does so in order to "reduce manpower commitments; free up resources for other activities; delegate to the contractor the manner of accomplishing the work; and take advantage of a contractor's special expertise, thereby creating the opportunity for a safer, more efficient operation."

#### 2. Supervision and Inspection

■ Plaintiff also asserts that the government was negligent in supervising, inspecting, and policing the contractor's tree-cutting activities. Under the applicable case law, the amount and nature of the supervision, in the absence of a clear directive, should be considered discretionary and policy-based.

5. Plaintiff claims that the Forest Service failed to supervise in that it did not inquire whether the contractor carried workmen's compensation or other insurance. This issue is treated below at n. 6.

Plaintiff argues that the inspector's conduct is analogous to that found in *McMichael v. United States*, 856 F.2d 1026 (8th Cir.1988) ("*McMichael II*"), and *Aslakson v. United States*, 790 F.2d 688 (8th Cir. 1986). In *McMichael II* the government was found liable for failing to order the evacuation of a munitions plant during an electrical storm. The inspector's safety checklist required the inspector to shut down the plant in the event of an electrical storm. 856 F.2d at 1033. Similarly, in *Aslakson*, the government's failure to elevate certain power lines was not protected by the discretionary function exception because the government's own safety policy expressly required it to raise power lines if they were a safety hazard. 790 F.2d at 693–94. In both cases no element of discretion existed; rather, government agents failed to act according to specific directives, and were held accountable for their failure to comply.

But *McMichael II* and *Aslakson* are distinguishable. Other cases suggest that where, as here, an agency's internal guidelines or flexible administrative approach to policing or inspection do not mandate a particular result, the agency is involved in the exercise of discretion. Plaintiff has failed to show that any rules or guidelines the agency was bound to follow mandated a particular result, much less that such rule was not followed.

In a relatively recent case in the Supreme Court, the issue was whether an agency had been negligent when it inspected an airplane and issued a certificate that did not comply with agency fire safety standards. *United States v. S.A. Empresa de Viacao Aerea Rio Grandense*, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984) ("*Varig*"). The duty to ensure that an aircraft conformed to agency standards lay with the manufacturer and operator, while the agency policed its standards through periodic review. The agency used a flexible spot-check system to review the manufacturer's work, the rigor of which would depend on the agency's experience with the manufacturer. The plaintiffs argued that the negligence of the agency to inspect certain aspects of the aircraft design in the process of certification gave rise to a cause of action.

The Supreme Court held unanimously that the spot-check system of compliance review, as well as the failure of agency inspectors to check certain items before certifying the aircraft, was within the discretionary function exception because the agency determined that this system of review "best accommodate[d] the goal of air transportation safety and the reality of finite agency resources." *Id.* at 820, 104 S.Ct. at 2768. "Judicial intervention in such decisionmaking through private tort suits would require the courts to 'second-guess' the political, social, and economic judgments of an agency exercising its regulatory function. It was precisely this sort of judicial intervention in policy-making that the discretionary function exception was designed to prevent." *Id.* The agency's negligence in failing to detect the flaw stemmed from the agency's judgment in performing the inspections. The Court noted that the agency had a duty to promote safety, not to insure it. *Id.* at 821, 104 S.Ct. at 2768.

Following *Varig*, *Tracor/MBA, Inc. v. United States*, 933 F.2d 663 (8th Cir.1991), held that where an inspector's checklist did not specify what action an inspector should take if he found certain safety violations in an ammunition plant, the inspector's failure to close down the plant was discretionary and protected by the discretionary function exception. "Here, most of the items on the safety review checklist, and all of the items on which Tracor relies, allowed the inspectors discretion in conducting their safety review. The items on the checklist do not specifically prescribe a course of action for the inspector to follow in checking compliance, or in deciding what to do if an inspector discovered a problem." *Id.* at 668.

*Judy v. United States Dept. of Labor*, 864 F.2d 83 (8th Cir.1988), applied *Varig* as well. An OSHA inspector failed to find a safety violation present in a hydraulic press. The rules the inspector followed required him to act on a violation only if he found one. The inspector found no violation, and the court held that the inspection

and failure to find a violation were protected by the discretionary function exception.

Here, where the government merely reserved a right to inspect and police compliance, the discretionary function exception must bar negligent enforcement claims absent violation of a mandatory agency procedure developed to enforce such compliance. According to affidavits of Forest Service personnel, the Forest Service used a spot-check system identical to that used in *Varig:*

> As is generally the case with Forest Service contracts, inspections concerning [the contract] were performed by one Forest Service employee on a spot-check basis. There were no full-time inspectors on site. The manner of inspection was discretionary with the Forest Service. The inspector had to act according to his own best judgment and without reference to fixed standards in determining which aspects of the operation needed assessment at a particular point in time. There was no checklist for the inspector to follow in performing the inspection. Rather, he exercised his discretion in determining what the inspection would entail.

The one Forest Service inspector involved, moreover, did not observe any unsafe practices on the job during his inspections on the two days preceding the accident. Plaintiff has adduced no mandatory rules addressing the agency's supervision of compliance with the contract. Hence, according to *Varig, Tracor,* and *Judy,* the agency action was entirely discretionary.[6]

### 3. Tree Selection and Cutting Methods

■ In a similar vein to its argument that the contract was negligently supervised and enforced, plaintiff also asserts that the Forest Service was negligent in its selection and its choice of method of removing trees.[7] Plaintiff wants to show that the Forest Service negligently chose to cut down the large beech tree that fell on Mr. Richardson, rather than use some other method of disposing of it such as girdling.[8] Again, the question is whether, in selecting trees and choosing removal methods, the Forest Service exercised policy judgment.

The Forest Service chose the trees to be removed and the method for doing so. The contract specified how the contractor would know what trees would be felled.[9] The trees were selected and marked, logically enough, by timber markers, who are employees of the Forest Service. The timber markers selected the trees by how they were spaced, *i.e.,* how far apart the tops of the trees were. The purpose was to clear out the competing trees so that a bigger, more timber-worthy tree might grow. The timber markers used their own judgment in selecting the trees for cutting. Thus, selection of the trees was a matter of discretion and policy-based.

The method for removing the tree was specified in the contract. Division 210 of the contract states: "All trees to be treated are considered noncommercial because of their small size, low value and marketability." Division 220 states:

> All black gum, sweet gum, and American Beech marked for treatment will be felled. All other trees marked for treatment will be completely girdled to a

---

**6.** The plaintiff claimed that the Forest Service *failed to inquire whether the contractor carried* workmen's compensation insurance. Indeed, it did so fail. Under *Varig* and *Judy,* however, the agency's failure to inquire about such contract compliance matters as insurance does not preclude application of the discretionary function exception.

**7.** Plaintiff claims in her amended complaint that the Forest Service "negligently marked the tree[ ] [which] caused the death of Ronnie Richardson." Plaintiff does not appear, however, to be arguing that the wrong tree was marked. There is no evidence whatsoever to suggest that

any trees were mismarked. Rather, plaintiff appears to take issue with the selection of the trees.

**8.** Girdling consists of sawing a ring around the tree, through the bark and into the sap wood, in order to kill it.

**9.** The contract included the following language:

> *210—Trees to be Treated:* Only those trees marked with paint on the lower two feet of their stems should be treated; those trees marked higher up the stem and not on the lower two feet should not be treated.

depth which entirely severs the outer and inner bark (cambium) and penetrated [*sic*] the sapwood of the trees. All girdles or cuts will be made 12″ or less above ground level.

How trees were to be removed depended on the species. The silviculturist in a particular area decided on the treatment for each species. In the opinion of the Forest Service, beech and gum trees must be felled rather than girdled because girdling generally will not kill them; felling is a more effective policy.

Hence, the Forest Service decided, in its discretion, that it wanted beech trees cut rather than girdled because, in its experience, cutting was a more effective technique.[10] Plaintiff has adduced no rule mandating that beech trees be cut rather than girdled, and there appears to be none. The selection and cutting of the trees, moreover, implicate policy judgments of the Forest Service. According to affidavits of Forest Service personnel, the statutory mission of the Forest Service includes the production of usable timber and forage. The Forest Service decided to have certain trees cut or girdled rather than chemically treated to cull undesirable growth and thin desirable growth, thereby "releasing" desirable tree species from competition for light, water, and soil nutrients. When the Forest Service makes decisions regarding the nature and specifications of tree-cutting contracts, it considers forest management, silvicultural techniques, and budgetary and staffing factors, in order to fulfill the agency's mission. The agency delegated the cutting itself to the contractor, reserving a right to inspect. The selection of timber-cutting techniques, then, was a proper exercise of agency policy in the pursuit of timber management. Accordingly, the selection and choice of removal

methods were discretionary and protected by the discretionary function exception.

### V.

Plaintiff claims the Forest Service had a duty to prevent the contractor from conducting inherently dangerous or ultrahazardous activities without proper precautions and to warn the employees of any unusually hazardous conditions.

#### A. Failure to Warn

 The parties adduce differing proof as to whether the Forest Service actually issued any warning regarding hazards in the cutting of the trees. The Forest Service inspector claimed that he would talk to all contractors at the beginning of the contract; here, he says, he advised the contractor, Eddy Heydenreich, who in turn advised his men, about the danger in cutting beech trees. The contractor, however, claimed that the inspector gave him no such warning, although the contractor appears to have been aware of the danger. The court must assume that no warning issued because disputed facts must be considered in the light most favorable to the nonmoving party. *Prelvitz v. Milsop*, 831 F.2d 806, 807 (8th Cir.1987). As we shall see, however, the difference in proof is not material.

It is beside the point whether a warning issued, for the decision to issue a warning at all is squarely within the discretionary function exception. Plaintiff has not shown that the inspector was required, by any statute, regulation, or policy, to issue a warning. Apparently, whether the inspector issued a warning was fully up to the inspector. This effectively distinguishes the instant case from *McMichael II* and *Aslakson*.

Failure to give a discretionary warning, moreover, is clearly within the exception.

---

10. Plaintiff would have the court believe that killing the trees with herbicide is safer and more effective. Although this appears to be merely a dispute of opinion among experts, under the summary judgment standard, the court accepts this as true. But for an example of the hazards of herbicide use see *Caplan v. United States*, 877 F.2d 1314 (6th Cir.1989) (plaintiff was hired to cut down trees that herbicide did not kill and then was injured when one of the already dead trees fell on him). Whether one is more effective than the other for removing trees is not the issue, but whether the Forest Service exercised discretion in choosing one over the other. Even if the Forest Service abused its discretion, its decision is still protected by the exception. *See* 28 U.S.C. § 2680(a).

Even if (as he claimed in his deposition without contradiction) the inspector always issued some form of caution to contractors, and even if the inspector did not issue one in this case (as the contractor claims), the failure to issue a warning does not undermine the application of the exception here, because there can be no liability "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The practice of giving warnings was in furtherance of the regulatory policy; therefore, failure to give one would be negligence, but within the exception. "Actions taken in furtherance of the program were likewise protected, even if those particular actions were negligent." *Gaubert*, 111 S.Ct. at 1274 (citing *Varig*). Assuming no warning was given, the inspector may have abused his discretion by failing to give one, but even his abuse of discretion is clearly protected by the discretionary function exception. *See Varig*, 467 U.S. at 819, 104 S.Ct. at 2767 (issuing safety certificate for airplane where violations actually existed within discretionary function exception); *Judy*, 864 F.2d at 84 (failure to warn factory worker that hydraulic press violated OSHA standards within discretionary function exception because inspector did not detect the violation); *Bacon v. United States*, 810 F.2d 827, 830 (8th Cir.1987) (failure to warn road workers of nearby presence of dioxin in absence of policy requiring warning held within discretionary function exception).

*Caplan v. United States*, 877 F.2d 1314 (6th Cir.1989), might appear contrary to this reasoning but in fact is not. In that case, a chain saw operator won a contract to cut down live trees in a forest that had been treated with mass herbicides to clear away unwanted trees. Some live trees were left that had not been killed and had to be cut by hand. After Caplan cut down a live tree, a dead tree fell on him and injured him. Caplan had been told that the trees had been treated, but not when. Despite the fact that Caplan could visually distinguish live trees from dead ones, the district court held that the government was negligent in failing to warn Caplan of an unreasonably dangerous condition created by the dead trees. The Sixth Circuit affirmed. The failure to warn may have been discretionary, it said, but was not a policy decision, because the failure to warn, by itself, was not required by the policy decision to cut down the trees. In other words, the court reasoned that the high-level policy decision to deforest did not require the omission of warnings, and therefore the discretionary function exception did not apply. *Id.* at 1316–17.

*Caplan* is distinguishable from the present case. First, in *Caplan* there was no evidence of any regular warning regarding the trees. Warnings were simply not given. Here, the undisputed testimony shows that warnings were regularly given as part of inspection, but may not have been given in this case. Thus, this case is closer to the oversights of *Judy* or *Varig*. Second, *Caplan* involved a danger other than the subject of the timber cutter's work: Caplan's job was to cut down live trees, yet he was hit by a dead one. Here, Mr. Richardson was hit by the live tree he was cutting down on an obviously steep slope. The danger here was far more evident than in *Caplan*.

*Caplan*, moreover, may not be consistent with recent Eighth Circuit decisions on the discretionary function exception, notably *Judy* and *Bacon*. In *Judy*, the inspector's failure to warn was not intended as part of any policy, but occurred simply because the inspector did not see the violation. The failure was held to be part of the policy because the inspector's actions were part of the system of inspection. The rule of *Judy* is that a mistake as part of an inspection should not take the inspector's actions out of the protection of the discretionary function exception unless a mandatory directive was violated. Here, assuming that no warning was given, the inspector's failure to give a warning is not distinguishable from the inspector's failure in *Judy* to issue a violation. The discretionary function

exception should still apply.[11]

## B. Ultrahazardous Activities

 Finally, the decision to cut timber in the area where Mr. Richardson was killed was a discretionary decision, whether or not it was inherently dangerous or hazardous because of the steep slope on which the trees grew or the type of trees that grew there. Any decision to cut any trees in the national forest was both discretionary and policy-based. No federal statute directed the Forest Service to remove trees at a particular place or specified a particular method of removing them such as girdling or cutting. Hence, the decision to cut was discretionary. No federal regulations, moreover, told the Forest Service which trees to cut down, whom to hire to cut them, who should provide insurance or workmen's compensation, how the contractor should be supervised, or where (hazardous or not) the cutting should take place. Plaintiff has failed to adduce rules mandating a particular result the Forest Service had to reach for any of these decisions. The administrative application of guidelines or simply an administrative approach of spot-checks, again, would be discretionary. *Varig*, 467 U.S. at 819, 104 S.Ct. at 2767. Hence, the Forest Service's actions were plainly discretionary. In addition, all of these decisions were in pursuit of an overall policy of forest management. Therefore, both tests for the discretionary function exception are satisfied. As in *Gaubert*, plaintiff is really pursuing a negligence action against the federal government based on the discretionary actions of lower-level employees. And as in *Gaubert*, it should fail.

In the end, [the] Amended Complaint alleges nothing more than negligence[:]

'negligent selection of directors and officers' and 'negligent involvement in day-to-day operations.' . . . If the routine or frequent nature of a decision were sufficient to remove an otherwise discretionary act from the scope of the exception, then countless policy-based decisions by regulators exercising day-to-day supervisory authority would be actionable. This is not the rule of our cases.

*Gaubert*, 111 S.Ct. at 1279.

The motion for summary judgment of the defendant United States will be granted.

---

**11.** *Caplan* may not even be consistent with *Varig* and *Gaubert*. It seems to the court that the decision not to give warnings, if there was a decision, would be grounded in the regulatory scheme if the warnings were deemed to be unnecessary to the scheme. And if no decision were considered, the failure to consider giving warnings would itself be an abuse of discretion protected under the exception. *See* 28 U.S.C. § 2680(a).

The scope of "policy," moreover, appears to be larger than *Caplan* would allow. The Su-

preme Court indicated in *Gaubert* that the scope of policy for the purposes of the discretionary function exception is quite broad, in that the decisions, omissions, and mistakes of government personnel regulating banks or inspecting airplanes are clearly covered, and the limit of the policy element of the exception in fact concerns matters wholly unrelated to the regulatory purpose, *i.e.*, driving one's car on official business. *See Gaubert*, 111 S.Ct. at 1275 n. 7.